18651

William C. CHAPMAN, Appellant-Respondent, v. FOREMOST DAIRIES, INC. and Travelers Insurance Company, Respondents-Appellants.

(154 S. E. (2d) 845)

*Roy McBee Smith, Esq.,* of Spartanburg, *for Claimant-Appellant,*

440

*Messrs. Butler, Chapman & Parler,* of Spartanburg, *for Defendants as Respondents,*

*Messrs. Butler, Chapman & Parler,* of Spartanburg, *for Defendants as Appellants,*

*Roy McBee Smith, Esq.,* of Spartanburg, *for Claimant as Respondent,*

*Messrs. Butler, Chapman & Parler,* of Spartanburg, *for Defendants,* in Reply on Contingent Appeal, .

May 22, 1967.

BUSSEY, Justice.

This is a Workmen's Compensation proceeding in which the claimant-employee appeals from a circuit court order reversing a compensation award. The employer has appealed from the order of the circuit court settling the case on appeal. Additionally, the employer has filed an appeal denominated as a "contingent appeal" with respect to a procedural question, which latter appeal this court is asked to consider only in the event that the order of the circuit court denying compensation be held erroneous.

The claimant was for a number of years employed by the employer at its plant in Spartanburg in its engineering department. At about 4 o'clock A. M. on the morning of June 23, 1961, the claimant while on duty slipped upon some spilled cream and fell upon a concrete ramp. In this fall he injured his right hip and right leg. It is undisputed that this injury arose out of and in the course of his employment. The claimant immediately reported the accident to his immediate supervisor who stated that he would make a proper report thereof. While the injury was painful, the claimant apparently did not think that he was seriously injured. He was scheduled to leave in a day or two after

the accident on his annual vacation. He sought no medical attention and went on a planned vacation trip to Florida, during which trip he suffered much discomfort. Upon return from his vacation trip, nineteen days after the accident, he sought medical attention, and upon examination it was discovered that he had a ruptured appendix. He was hospitalized for the ruptured appendix on July 12, 1961, and remained there for ten days. He was given heavy doses of antibiotics to localize the infection, and in August, 1961, he was hospitalized again and an appendectomy was performed on August 22, 1961. The claimant returned to work at his usual duties on September 30, 1961, and no compensation was claimed, as at that time claimant had sustained no loss of wages as a result of his accident. ·

While the claimant still had pain in his right hip throughout the period of time that he was being treated and operated on for the ruptured appendix, and called such to the attention of both the attending physician and the surgeon who performed the appendectomy, neither of these doctors apparently attributed any particular importance thereto, and, as far as the record disclosed, made no attempt to treat or alleviate his injured hip.

Upon his return to work, the claimant continued to experience difficulty with his hip injury but such did not apparently materially interfere with the performance of his duties. His general health, however, started to decline and his discomfort increased from the pain in his right hip and leg. He lost weight from 183 pounds to 123 pounds, although the record does not show the precise date upon which his weight loss commenced.

In any event, on April 27, 1963, the claimant had to stop work and seek medical attention. Between May 11, 1963 and August 9, 1963, when he was admitted to the Medical College Hospital in Charleston, he was hospitalized several times in Spartanburg and was seen by various doctors in Spartanburg, all of whom concluded that he probably had a hidden cancer. The preliminary or tentative diagnosis at

the Medical College was the same, but on August 22, 1963, an exploratory operation disclosed that he had no cancer, but instead had a large abscess in the psoas muscle of the right hip. This abscess was opened and drained, following which the claimant's condition improved, but he was still totally disabled at the time of the hearing, commenced before the single Commissioner in January, 1964.

A pathological study done at the Medical College showed evidence of internal hemorrhage at the site of the abscess which medical witnesses described as a hematoma. A culture was taken from the abscess at the time of the operation and the surgeon who performed the operation testified, "There was no growth in the culture. It would seem to be a sterile abscess at the time we operated."

Whether the claimant is entitled to compensation depends upon whether there is any competent evidence to support a finding of causal connection between claimant's fall on his hip and the abscess which finally disabled him. It is not contended that his fall and injury to his hip had any causal connection with the ruptured appendix which he suffered. It is contended, however, that the accident caused the hematoma in and around the psoas muscle, which hematoma upon becoming infected from some · source (most probably the ruptured appendix) turned into the abscess which caused the disability. The question before us is simply whether there is any competent evidence to support this theory of causal connection upon which the award of the Commission was based.

All of the doctors who testified agreed that a hematoma, such as the claimant had, provided or formed a good culture medium for the formation of an abscess such as claimant developed. There does not seem to be any disagreement as to the possibility or probability of the hematoma, which developed into an abscess, having been caused by the fall sustained by claimant. There was substantial agreement among the medical witnesses as to an abscess, such as the claimant had, remaining in a suppressed or sterile state for

a long period of time, though there was some difference of opinion as to the length of time, and the circumstances under which an abscess would remain in a sterile state.

Much of the evidence, and a lot of argument here, is addressed to what effect the administration of antibiotics, and the amount or course thereof, will have in suppressing an abscess and causing it to remain in a sterile state for a long period of time. The materiality of such does not readily appear. The surgeon who performed the appendectomy in the summer of 1961, and who also participated in the diagnostic examinations in the summer of 1963, testified for the employer. He repeatedly gave it as his opinion that the most likely and probable source of the infection was the ruptured appendix which occurred shortly after the fall claimant sustained. His opinion in that respect was confirmed by other medical evidence, and none contradicts such probability. It would seem logically to follow that the abscess having formed, shortly after claimant's injury in the summer of 1961, just why or how it became sterile and did not disable him for so long a period of time is immaterial. We are concerned with causation and not with precisely why the disabling effect was delayed.

Briefly summarized, all of the medical evidence admits that claimant's theory of causal connection is possibly correct, but the only medical evidence which meets the most probable test is the testimony of Dr. Walter D. Hastings, Jr., who did not attend the claimant, but was called as an expert witness and testified in response to a hypothetical question. It is contended, however, by the employer that his testimony should have been excluded and that such was of no probative value. The order of the circuit court was predicated upon what we think was an erroneocs analysis and rejection of the testimony of Dr. Hastings.

The hypothetical question addressed to him was as follows:

"Dr. Hastings, assuming that it is established that a claimant slipped upon some slick substance and fell very

hard upon a concrete floor upon his right hip, crushing a metal flashlight in his right hip pocket, and had pain in his right hip and leg from that day forth; that two weeks after the fall, the claimant's appendix ruptured and he was given heavy doses of antibiotics and a month later an appendectomy was performed; that he went back to work a month and a half after the appendectomy and worked for some 19 months, during which time he continued to have pain in his right hip and leg, losing a great deal of weight, having a loss of appetite and a generally progressing weakness until he was finally unable to work; that thereafter he was confined to his bed and hospitalized on three occasions during a period of three months for the purpose of diagnosis; during these hospitalizations he was administered heavy doses of antibiotics; that claimant's condition was not successfully diagnosed, it being finally assumed that he had a cancer; that after this an exploratory operation was performed at the Medical College and a large sterile, retroperitoneal psoas abscess was discovered in the right psoas muscle, was drained and the abdomen was closed; that a specimen from this abscess, under the microscope, showed evidence of a hematoma or internal hemorrhage in the psoas muscle; that the claimant had been a vigorous man before the fall, without other injuries to his right hip and leg.

Now based upon those assumed facts, Dr. Hastings, do you have an opinion as to the cause for the abscess in the muscle?"

The record reflects that the foregoing question was submitted to Dr. Hastings some time in advance of the hearing for study, and that in response thereto, he testified as follows:

"A. Well, in my opinion the causation of the psoas abscess would most probably have been an infection of a hematoma in the psoas muscle derived from the infection of a ruptured appendix which this man had. The infection would travel in the direction of the psoas muscle, one of the main directions that the infection does travel and would seem most

probably to have involved the hematoma or blood clot which was back there and from that he got a big sterile abscess or a big abscess which was either sterilized itself or with repeated course of antibiotics was sterilized.

"Q. Yes, sir. Based upon the facts stated in this hypothetical question do you have an opinion as to the relation of this abscess to the fall?

\*. \* \*

"A. Yes, the question itself involves no other injury or rules serious injury out and the hematoma or hemorrhage in the psoas muscle according to the question was most probably due to the fall which he received because the pain was immediately following this and hemorrhage in the area of the psoas muscle can and does frequently produce pain in the hip and leg because it lies upon and around a goodly number of the nerves of the leg and hip region.

\* \* \*

"Q. Dr. Hastings, do you have an opinion based upon this hypothetical question and the facts contained in it as to the relationship of the abscess or its origin, as to its origin?

"A. Yes, I think that the abscess most probably resulted from the fall which produced the hematoma which got infected and produced the abscess. Therefore most probably the fall was the precursor and deciding factor in the abscess. In the location which is described, that is in the psoas muscle."

The qualifications of Dr. Hastings, as an expert, are conceded, and we think it clear that the foregoing testimony on his part fully meets the most probable test and affords competent evidence supporting the finding of fact by the Commission that the fall sustained by the claimant caused his disabling abscess.

The employer argues, however, that the testimony of Dr. Hastings was inadmissible because the hypothetical question addressed to him was not a proper one. There is no merit in this contention. In the first place,

there was no proper objection to the hypothetical question. Counsel for the employer objected to the hypothetical question as an improper one, by the general statement that it contained matters not supported by the record and that it omitted matters that were of importance. Counsel for claimant sought to elicit from counsel for the employer a specific objection as to what if anything, was wrong with the question, so that counsel might be given opportunity to reframe the question to meet any meritorious objection on the part of the employer. Counsel for the employer took the position that counsel for claimant was not entitled to a specific objection and refused to specify wherein he thought the question was defective. The hearing Commissioner then overruled the objection, and correctly so. In 88 C.J.S. Trial § 129b, page 262, the following rule is stated:

"Since objections to hypothetical questions asked expert witnesses must be specific, a general objection is insufficient to raise the point that the question is improper as omitting necessary facts or as assuming facts not in evidence; in such case the objection should point out what necessary facts were omitted, or what facts were included which were not proved."

In this connection see also 58 Am. Jur. 486, Witnesses, Sec. 858, and *Greer v. Greenville County,* 245 S. C. 442, 141 S. E. (2d) 91.

We quote from the cited case the following:

"It is generally true that a hypothetical question should assume substantially all material facts relating to the subject on which the judgment of the expert is sought and a question which does not contain all the facts essential to some theory within the range of the evidence should be excluded, provided the objection thereto specifically points out the imperfection."

In addition to there being no proper objection to the hypothetical question, there is not pointed out any assumed facts, stated therein, which are not abundantly supported

by the record. Counsel for employer, in an effort to show that material facts were omitted and to weaken or change Dr. Hastings' opinion as to causation, subjected him to an exhaustive cross examination which, incidentally, consumes twenty-six pages of the printed transcript of record. A rather careful analysis of this cross examination reflects that this exhaustive effort on the part of counsel failed to either substantially weaken the doctor's opinion as to causation or show where any really substantial and material matters were omitted from the hypothetical question posed by counsel for the claimant.

We shall not attempt to set forth this cross examination in anything like full. The doctor was examined at great length as to the minute details of the claimant's condition, complaints, treatment by various doctors, charts, records, temperature, etc. which were not embodied in the hypothetical question and which Dr. Hastings, of course, had no personal knowledge about.

Dr. Hastings was offered by the claimant as an expert witness who had no personal knowledge of the case. For his opinion to be admissible in evidence and of probative value it was unnecessary for all details to be included in the hypothetical question. It was sufficient that substantially all material facts necessary to the formation of an intelligent opinion as to causation were included in the hypothetical question, and supported by the evidence.

In *Ellis v. Kansas City Life Ins. Co.,* 187 S. C. 334, 197 S. E. 398, this court quoted with approval the following from 22 C.J. 706,

"The expert, properly so called, is asked what would be his judgment upon all or any prescribed part of the facts, as to which evidence has been lawfully received, or which has been admitted, assuming that they are true; provided that a sufficient number of facts are assumed to enable the witness to give an intelligent opinion. The witness having no facts in mind as a result of observation, it is in this way alone

that a proper basis for a reasonable judgment can be furnished, * * *."

Of course, as argued by the employer, it is well settled that the probative value of expert testimony, based upon hypothetical facts, stands or falls on the existence or nonexistence of the facts upon which it is predicated. Here, as previously stated, the facts assumed in the hypothetical question are completely supported by evidence and nothing was brought out, we think, in cross examination of Dr. Hastings sufficiently at variance, or in conflict, with the hypothesis upon which Dr. Hastings' opinion was predicated to destroy the probative value thereof. At most, the matters drawn from him on cross examination, viewed in the light most favorable to the employer, would tend only to weaken, but not destroy, the probative value of his opinion. The credibility and weight of the doctor's testimony was, of course, for the trier of facts. *McCarty v. Kendall Co.,* 238 S. C. 493, 120 S. E. (2d) 860.

For the foregoing reasons we conclude that the circuit judge erred in reversing the compensation award for lack of competent evidence proving causal connection between claimant's injury and his disability. The judgment of the lower court is in that respect, accordingly, reversed.

We come now to the contingent appeal of the employer which challenges the validity of the first sentence of Rule 18 of the Industrial Commission (1962 Code of Laws of South Carolina, Vol. 17, page 320), which reads as follows:

"In all cases where liability for compensation is denied the defendants must set out in letter details of grounds on which liability is denied."

Facts necessary to an understanding of this appeal are as follows. Although the accident was timely reported to the employer, a first report thereof was not, for some unexplained reason, filed with the Industrial Commission until September 4, 1963. It is at least inferable that it was filed then, only because the employer had reason to think, follow-

ing the operation in Charleston, that claimant's disability, probably resulted from the accident which he sustained in June, 1961.

On October 7, 1963, employer's carrier addressed to claimant the following communication:

"Please be advised that our investigation of the above case does not reveal that you sustained an accident arising out of and during the course of your employment.

"We will, therefore, make no voluntary payment for either compensation or medical benefits in the case."

In apparent compliance with the provision of Rule 18, copies thereof were sent to the Commission, the employer and the Medical College Hospital in Charleston. A claim for compensation was forwarded to the Commission on behalf of the claimant on November 15, 1963.

Reference to the quoted letter will show that liability was denied on the sole alleged ground that claimant did not sustain an accident arising out of and during the course of his employment, but when the case came on for a hearing before the single Commissioner in January, 1964, the employer sought, for the first time, to assert the additional defenses that written notice of the accident had not been given pursuant to Code Sections 72-301 and 72-302, and that the claim was barred because not filed with the Commission within one year after the accident, pursuant to Section 72-303 of the Code. The hearing Commissioner ruled that these defenses could not then be asserted, since they were omitted from the letter of denial of liability written pursuant to Rule 18, and his holding in this respect was affirmed by the full Commission and the circuit court.

The employer does not seriously argue that there was any prejudice to it for failure to give it written notice. It is strongly urged, however, that the pertinent sentence of Rule 18 is invalid, beyond the powers of the Commission, and that it should have been allowed to assert at the hearing, for the first time, the defense that the

claim was not filed with the Commission within one year following the accident, even though such defense was not mentioned in the letter of denial of liability. Before proceeding to consider and dispose of this contention, it is well, we think, to revert to the purpose and the effect of the one year limitation contained in Section 72-303 of the Code. It is settled by our decisions that the purpose thereof is to protect employers and their insurance carriers against long delayed demands; that the one year provision is one which may be waived and one which the employer-carrier may be estopped from asserting; that the provision is not jurisdictional and that such section should be given a liberal construction.

The claimant argues that the one year statute of limitation, even if timely raised, is inapplicable and not a bar to the claim in view of the unusual facts in the instant case, and the employer argues conversely. This issue, however, was not passed upon by the single Commissioner, the full Commission or the circuit court. We accordingly, proceed to consider the single question of whether the challenged first sentence of Rule 18 is valid, as applied in the instant case.

This court has previously had occasion to consider the second sentence of Rule 18, which reads as follows:

"In all cases where an appeal is made to the full commission, the grounds for appeal must be set out fully in detail * * * ."

In *Hoke v. Cherokee County,* 216 S. C. 376, 58 S. E. (2d) 330, and *Jones v. Anderson Cotton Mills,* 205 S. C. 247, 31 S . E. (2d) 447, this court upheld the validity of the quoted sentence and held that the statute of limitation here involved was waived, because not made a ground of appeal before the full Commission in compliance with the rule.

The employer argues, however, that the first sentence of Rule 18, with which we are presently concerned, should not be given the same force and effect as the second sentence, which has already been held valid by this court. In brief, its arguments are based on the contention that various provi-

sions of the Compensation Act, as well as decisions of this court, require that proceedings under the Act be summary, informal and simple; that this provision is in conflict not only with the foregoing principles, but, as applied in this case, is in conflict with the statute of limitation. It is further argued that enforcement of such provision would require formal pleadings, not at all contemplated by the Act.

With these arguments of the employer we do not agree. The provision of the rule, as applied to this case, only required the employer to set out in a letter its defenses, a quite simple, informal and summary procedure. The rule does not require, we think, any precise or formal pleadings, nor does it require the defendants to anticipate all questions that might possibly, or incidentally, arise under the law in the course of the hearing. If an employer has, however, grounds for denying liability for compensation, there is no sound reason why it should not be required to advise the Commission in the form of a letter as to the substantive grounds on which liability is denied. The rule contemplates and requires only the simplest procedure and compliance with it enables the principal issues to be framed before a hearing is commenced.

Code Section 72-59 authorizes the Commission to make rules not inconsistent with the Act, for the purpose of carrying out the provisions of the Act. The rule under attack was promulgated pursuant to the foregoing Act on August 30, 1937, and its validity has not heretofore been challenged in this court.

Similar rules have, however, been considered in other jurisdictions. Compensation acts generally contemplate and provide for, just as does our act, summary, simple and informal procedure. Nevertheless, in 100 C.J.S. Workmen's Compensation § 500, p. 444, it is said,

"An objection that the claim for compensation was not made or filed in the requisite time must be raised by the pleadings before the hearing except where such matter is considered jurisdictional. * * *"

"Where the board or commission under its authority to make rules requires an employer denying liability to file a denial in writing, specifying the facts and circumstances on which he relies as a defense, grounds of defense not so specified cannot be considered."

A well considered case, supporting the foregoing text, is that of *Roach v. Kelsey Wheel Co.*, 200 Mich. 299, 167 N. W. 33. The court there held valid a rule of the Michigan Industrial Accident Board which actually required much more formality and detail from the employer as to his defenses than does our rule. We quote the following from the language of that decision:

"That power to make rules is lodged in the board the section above quoted demonstrates; that the rule above quoted is a reasonable exercise of such power seems to us beyond cavil. It bespeaks an orderly procedure, gives notice to parties interested of the issue raised, and an opportunity to procure witnesses and prepare for a hearing upon such issues. It aids the due administration of justice, which is as much the duty of administrative boards as of the courts. We do not undertake to say, and do not say, that technical niceties or strict rules of common-law pleadings should be indulged in or favored. On the contrary, substance, rather than form, should be the object of attainment."

We conclude that the contingent appeal of the employer is without merit and that the holding of the lower court to the effect that Rule 18, as construed and applied in the instant case, was valid, is accordingly, affirmed.

The appeal of the employer from the order of the lower court settling the case is, in our view, without merit. We have, nevertheless, in considering the main appeal, as well as the contingent appeal, given due consideration to all matters inserted in the record as a result of the last mentioned appeal.

The record reflects that on appeal from the Commission to the circuit court, the employer excepted to the extent of

the Commission award for medical benefits. Since the circuit court concluded that the claimant was entitled to no compensation, these exceptions were not passed upon by it and are, therefore, still open and not yet decided.

The judgment of the lower court is, in accordance with the views hereinabove expressed, affirmed in part and reversed in part.

Moss, C. J., Lewis, J., and Lionel K. Legge and George T. Gregory, Jr., Acting Associate Justices, concur.