WOODROW WELCH ET AL. v. ARTHUR A. FOGARTY, INC.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 7, 1968—decided February 7, 1969

*Frank DeNezzo,* for the appellant (named plaintiff).

*Donald P. Chernoff,* with whom, on the brief, was *Edward S. Pomeranz,* for the appellee (intervening plaintiff).

RYAN, J.   The plaintiff Woodrow Welch, while employed by the Elmwood Electric Company, hereinafter referred to as Elmwood, was injured in the course of his employment on March 8, 1962, when his employer's pickup truck, in which he was riding

as a passenger, was struck by a tractor-trailer truck owned by the defendant. The trial court found the following facts: As a result of the injuries which Welch sustained in the collision, Elmwood became obligated to pay and did pay to Welch compensation under the provisions of the Workmen's Compensation Act. On February 28, 1963, Welch commenced the present action against the defendant to recover damages for the injuries which he sustained as a result of the collision. On May 24, 1963, with the permission of the court, Elmwood filed an intervening complaint. Elmwood paid on behalf of Welch the sum of $1740.30 for medical expenses and the sum of $1040 for compensation for temporary total disability for the periods from March 9, 1962, to May 25, 1962, and from March 10, 1963, to May 13, 1963. On June 3, 1964, Welch, his wife and children entered into a stipulation with Elmwood, and its insurer, under the terms of which Elmwood and its insurer agreed to pay to Welch the additional sum of $7000 in "full, final and complete settlement, adjustment, accord and satisfaction for all claims which . . . [Welch and his dependents] might otherwise have against . . . [Elmwood and its insurer]." The stipulation was approved on June 9, 1964, by the compensation commissioner for the first congressional district and was found by him to be "a just and reasonable settlement of a disputed claim." In accordance with the stipulation an award was made by the commissioner. Elmwood has paid to Welch the sum of $7000 in accordance with the stipulation and the award made pursuant to it. The trial court found that, at the time of the execution of the stipulation and at the time when Elmwood paid Welch the further sum of $7000, Welch understood and realized that Elmwood, as his employer, was to be reim-

bursed for all its payments made to him out of the proceeds of the pending third-party action against the defendant. During the trial of the case against the third-party defendant, the parties entered into a stipulation for judgment in favor of the plaintiffs to recover of the defendant the sum of $25,000 and submitted to the court the issue whether there should be an apportionment of the amount of the judgment between Welch and the intervening plaintiff, Elmwood, in accordance with § 31-293 of the General Statutes, and if so, how much should be awarded to each of them.

The trial court concluded that, under the terms of the stipulation, the payment by Elmwood to Welch of the further sum of $7000 was in full, final and complete settlement of all claims which Welch might otherwise have against Elmwood and its insurer; that the stipulation was intended to settle the claims of Welch and his dependents against Elmwood for compensation payments to become due under the Workmen's Compensation Act only and was not intended to affect the claims of either Elmwood or Welch against the defendant in the negligence case; and that the judgment for $25,000 should be apportioned so that Welch will recover of the defendant the sum of $15,219.70 and the intervening plaintiff Elmwood will recover the sum of $9780.30.

Welch claims that the trial court erred in finding that at the time of the stipulation between him and Elmwood, he "understood and realized" that his employer would be reimbursed out of the proceeds of the third-party action which was pending against the defendant for all payments made to him by the employer. This finding was predicated upon the testimony of the attorney who represented Welch at the time of the stipulation. His testimony was admit-

ted by the trial court over the objection of Welch, and exception was duly noted. Welch also assigns error in the ruling of the trial court admitting this testimony into evidence and in the conclusions of the trial court.

The fundamental contention of Welch is that, under the stipulation of June 3, 1964, the intervening plaintiff, Elmwood, released and relinquished any rights which it had pursuant to § 31-293 of the General Statutes to any portion of the judgment rendered in this action against the defendant.[1] The stipulation was a voluntary agreement within the terms of § 31-296 of the General Statutes.[2] *Sugrue*

---

[1] "Sec. 31-293. LIABILITY OF THIRD PERSONS TO EMPLOYER AND EMPLOYEE. When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. . . . If such employer and employee join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. The rendition of a judgment in favor of the employee or the employer against such party shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner thereafter deems payable to such injured employee. . . ."

[2] "Sec. 31-296. VOLUNTARY AGREEMENTS. If an employer and an injured employee, or in case of fatal injury his legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement

v. *Champion*, 128 Conn. 574, 578, 24 A.2d 890; *Wallace* v. *Lux Clock Co.*, 120 Conn. 280, 284, 180 A. 466. Such a voluntary agreement is subject to modification by a compensation commissioner pursuant to § 31-315 of the General Statutes under certain stated conditions.[3] The commissioner is given the same power to and modify an award as any

shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. He shall retain the original agreement, with his approval thereof, in his office and, if an application is made to the superior court for an execution, he shall, upon the request of said court, file in the court a certified copy of the agreement and his statement of approval thereof. Before discontinuing payment on account of total or partial incapacity under any such agreement, the employer, if it is claimed by or on behalf of the injured person that his incapacity still continues, shall notify the commissioner and the employee of the proposed discontinuance of such payments, with the date of such discontinuance and the reason therefor, and, until such notices are sent to the commissioner and such employee, the liability for such payments shall continue, until otherwise ordered by the commissioner. . . ."

[3] "Sec. 31-315. MODIFICATION OF AWARD OR VOLUNTARY AGREEMENT. Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter shall be subject to modification, upon the request of either party and in accordance with the procedure for original determinations, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement or award in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

court of the state has to open and modify a judgment of such court. An award may be opened and modified where there is fraud or mistake. *Mazzotta* v. *Mazzotta,* 121 Conn. 149, 151, 183 A. 408; see *Metall* v. *Aluminum Co. of America,* 154 Conn. 48, 53, 221 A.2d 260. From the record, it does not appear that either Welch or Elmwood has requested the workmen's compensation commissioner to modify the award in any respect.

An examination of the stipulation and award indicates that it was an agreement compromising a disputed claim for workmen's compensation and providing for a lump-sum payment in settlement of all claims for compensation of any nature arising out of the accident in question, including claims of Welch's dependents. At the time of the execution of the stipulation, Elmwood, under General Statutes § 31-293, had certain substantive rights in the third-party action which it had entered as an intervening plaintiff on March 24, 1963. It had a claim consisting of (1) the amount of any compensation paid on account of the injury which was the subject of suit and (2) an amount equal to the present worth of any probable future payments which it had by award become obligated to pay on account of such injury. Although the stipulation did not specifically mention the suit against the third party, Elmwood and Welch were, of course, cognizant of it. The signers of the stipulation consisted of Welch, his wife and prospective dependent, four minor children acting by and through Welch and his wife as parents and natural guardians, Elmwood the employer respondent, and the insurer respondent. In the body of the stipulation all of these are referred to as the "parties to the controversy." The final paragraph of the stipulation provided as follows:

"It is further agreed by and between the parties that this stipulation was not induced or entered into by fraud, accident, mistake or duress and that none of the parties hereafter shall have any further claims under the Workmen's Compensation Act of the State of Connecticut because of the accident herein described." All of the parties united in requesting that the workmen's compensation commissioner approve the stipulation.

As far as the record in this case discloses, the workmen's compensation commissioner had only the stipulation before him. Approval of such a stipulation by the commissioner is not an automatic process. It is his function and duty to examine all the facts with care before entering an award, and this is particularly true when the stipulation presented provides for a complete release of all claims under the act. See Beers, "Compromise Agreements in Workmen's Compensation; Their Limitations," 16 Conn. B.J. 161, 174. "The provisions of the Compensation Act make clear that it is the underlying scheme and purpose of the law to protect the employee, even to the extent of rendering nugatory his own agreement when it fails to assure him of the compensation which the law intends he should have. Accordingly, [Rev. 1930] § 5257 [now General Statutes § 31-290] prescribes that 'no contract, expressed or implied, no rule, regulation or other device shall in any manner relieve any employer, in whole or in part, of any obligation created by this chapter, except as herein set forth.' Payment of compensation under the act is consequently upon an entirely different basis from payments made in satisfaction of common law rights. It has given effect to a revolutionary change in public policy by imposing on the employer his share of a common loss in a common

industry, which the state is interested in seeing that he shall bear lest the injured employee become a public charge. *Fair* v. *Hartford Rubber Works Co.,* 95 Conn. 350, 356, 111 A. 193. The provisions of [Rev. 1930] §§ 5257 [now § 31-290], 5247 [now § 31-296] and 5240 [now § 31-315], considered together, make clear that the effect of any purported release of the employer from payment of compensation under the act such as is contained in the stipulation before us is restricted within limits unknown to the common law. The practical effect of these provisions is to incorporate in the terms of the stipulation a condition that, in case any of the contingencies referred to in [Rev. 1930] § 5240 [now § 31-315] shall subsequently arise or such situation as would entitle a court to open or modify its judgment shall exist, at any time during the statutory compensation period, the release shall be subject to such modification by the commissioner as is necessary properly to carry out the spirit of the act under the circumstances as they then are. This condition entitles either the employee or the employer to seek relief in this way when occasion warrants. Increased incapacity of the plaintiff, a change in conditions, a mutual mistake in procuring the award pursuant to the stipulation . . . all fall within the terms of [Rev. 1930] § 5240 [now § 31-315], and proof of any of them might call for a revision of the award by the commissioner." *Sugrue* v. *Champion,* 128 Conn. 574, 579, 24 A.2d 890.

The language of the stipulation was plain and unambiguous. There can be no doubt that it was the expressed intention of all the parties, including Elmwood and its insurer, to release and relinquish all their rights under the Workmen's Compensation Act. Elmwood made no attempt in the stipulation to

reserve its right to reimbursement under General Statutes § 31-293. Nor has it sought to open or modify the award under § 31-315 by filing such a request with the workmen's compensation commissioner. The interpretation urged by Elmwood, that the intention of the parties in signing the stipulation was not to affect Elmwood's rights against the third-party defendant, is contrary to the clear intent expressed by the language used. If there was an understanding or agreement not embraced within the language of the stipulation, it should have been made known to the workmen's compensation commissioner. In view of the apparent seriousness of the injuries claimed, the commissioner then might well have refused to approve the stipulation and render an award.

Where, as here, the language of the stipulation approved by the commissioner is clear and unambiguous, there is no occasion for a court of general jurisdiction to admit parol evidence for the purpose of showing that the agreement of the parties was one other than that approved by the commissioner. The trial court was in error in admitting into evidence the testimony of the attorney. It is not the function of the trial court to modify an award. It is the special function of the workmen's compensation commissioner to open and modify an award under General Statutes § 31-315 "upon the request of either party and in accordance with the procedure for original determinations." The trial court had before it a stipulation and award under the terms of which Elmwood had released all its rights under the Workmen's Compensation Act which, of course, embraced any right to reimbursement for damages recovered in the third-party action.

Since this conclusion is dispositive of the appeal,

it is unnecessary to discuss Welch's remaining claims.

There is error in part; the judgment is set aside on the question of apportionment only and the case is remanded with direction to render judgment that the plaintiff Woodrow Welch recover the sum of $25,000 from the defendant without apportionment to the intervening plaintiff, Elmwood Electric Company.

In this opinion the other judges concurred.