DOROTHY ADZIMA *v.* UAC/NORDEN DIVISION ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued November 9, 1978—decision released March 20, 1979

*Harold L. Rosnick,* with whom, on the brief, was *Sigmund L. Miller,* for the appellant (plaintiff).

*George A. Downing,* for the appellees (defendants).

LONGO, J.   The plaintiff, widow of the deceased employee, Emil Adzima, appeals from a judgment of the Court of Common Pleas sustaining the finding and award of the workmen's compensation commissioner for the seventh district in denying benefits. The plaintiff's appeal challenges the denial of her motion to preclude the defendants from asserting a defense, and the denial of her motion to correct the findings of the commissioner.

The material facts are not in dispute: Emil Adzima was employed by United Aircraft/Norden Division, located in Norwalk, Connecticut. On January 4, 1972, he slipped on some oil and, to avoid falling, twisted his body completely around. As a result of the accident, a myelogram was performed on February 9, 1972; on April 13, 1972, Adzima decided to undergo the surgery recommended by his treating physicians to relieve the pain in his lower back. Despite the surgical intervention he continued to complain of pain. A second myelogram was performed on October 25 and on November 6 it was suggested by his treating physician that his pain could be relieved by further surgery. Adzima, however, refused to have further surgery up to and including November 19, 1972. On that day, Emil Adzima died as a result of a coronary occlusion which was unrelated to the accident. From the date of the accident until his death the defendant insurance company, on behalf of the employer, paid in full all benefits due the decedent under the Work-

men's Compensation Act. It is undisputed that his injuries arose out of and in the course of his employment.

The record discloses the following evidence pertinent to the determination of the plaintiff's appeal. On December 11, 1973, approximately thirteen months following the employee's death, the plaintiff sent a written notice of claim to the employer and its insurer seeking $12,350 in benefits for disability due to a specific injury to the decedent's back under the provisions of § 31-308 (m)[1] of the General Statutes. On February 4, 1974, copies of the letters were sent to the compensation commissioner with a claim that the employer and the insurer were conclusively presumed to have accepted the compensability of Adzima's injury and that they were precluded from contesting the plaintiff's right to receive compensation or to contest the extent of Adzima's disability. At that time no disclaimer notice had been filed by the defendants with the commissioner in response to the plaintiff's notice to them of the disability claim for compensation. On April 21, 1975, the plaintiff filed with the commissioner a motion to preclude the defendants from contesting her claim, asserting that the employer failed to notify the commissioner of the specific grounds on which the right of compensation was contested, as required by General Statutes § 31-297 (b). Following a formal hearing, pursuant to the provi-

---

[1] "[General Statutes] Sec. 31-308. COMPENSATION FOR PARTIAL INCAPACITY. . . . (m) for the loss of the use of the back, that number of weeks which the proportion of incapacity represents to the maximum of five hundred and twenty weeks."

sions of General Statutes § 31-297 (a),[2] at which medical testimony was introduced on behalf of both parties, the commissioner denied the plaintiff's motion to preclude, rejected the plaintiff's substantive claim that the deceased had reached maximum improvement on or before October 10, 1972, and that he had sustained a permanent partial disability of 25 percent of his back, and dismissed the plaintiff's claim for additional compensation, stating that the plaintiff had failed to sustain the burden of proving that the decedent had reached maximum improvement before his death.

Upon the plaintiff's appeal from the decision of the commissioner, the Court of Common Pleas found that on February 2, 1972, the insurer sent to the injured employee an "agreement as to compensation," commonly called a "voluntary agreement," which the decedent did not sign and return; that the defendant insurer treated the claim as a compensable injury under the statute, and had made all payments of compensation and related medical bills to the date of death, and that as of that date the employee was under active treatment. The court concluded that, as the defendant had initially accepted liability to pay compensation, there was no contest which required notice pursuant to § 31-297 (b). The court sustained the commissioner's finding and decision and dismissed the appeal. It is from that judgment that the plaintiff has appealed to this court.

---

[2] "[General Statutes] Sec. 31-297. HEARING OF CLAIMS. (a) If an employer and his injured employee, or his legal representative, as the case may be, fail to reach an agreement in regard to compensation under the provisions of this chapter . . . the commissioner shall appoint an early hearing upon the matter."

## I

We first address the plaintiff's claim that the compensation commissioner erred by refusing to preclude the defendant employer from contesting the plaintiff's right to receive compensation due to the defendant's failure to file any notice with the commissioner of an intention to contest liability or the extent of the deceased's disability. The plaintiff argues that that issue of preclusion is controlled by § 31-297 (b)[3] of the General Statutes, and bases her claim upon this court's statements in *Menzies* v. *Fisher,* 165 Conn. 338, 347, 334 A.2d 452 (1973), in which we construed the provision of § 31-297 (b), attaching a conclusive presumption to an employer's failure to file a notice contesting *liability* within the prescribed time limit. In *Menzies* we held (p. 347) that "the giving of notice by the employer as to the specific grounds on which the right to compensation is contested is a condition precedent to the defense of the action." The plaintiff argues that here, as in *Menzies,* the defendant employer's failure to contest the plaintiff's claims, as outlined in her letters of December 11, 1973, and February 4, 1974, con-

---

[3] "[General Statutes] Sec. 31-297. HEARING OF CLAIMS. . . . (b) Whenever liability to pay compensation is contested by the employer, he shall file with the compensation commissioner, on or before the twentieth day after he has received a written notice of claim, a notice in accord with a form prescribed by the commissioners stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested, and a copy thereof shall be sent to the employee. If the employer or his legal representative fails to file the notice contesting liability within the time prescribed herein, the employer shall be conclusively presumed to have accepted the compensability of such alleged injury or death and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or the extent of his disability."

clusively precluded it from raising a defense to those claims. The plaintiff misinterprets the import of our decision in *Menzies*. Neither that case nor the provisions of § 31-297 (b) were intended to apply to a situation where, as here, an employer accepts liability to pay a compensable injury, but contests only on the issue of the *extent* of the employee's disability.

Attention must be focused upon the precise facts of *Menzies*. In that case, the employer had contested the *initial claim of the employee* as to the employer's *liability* for compensation: the employer argued that the plaintiff's injury did not "arise out of and in the course of his employment." It was in this context—a disclaimer of initial liability—that we held that an employer was precluded from asserting a defense if it failed to specifically indicate grounds for a contest over liability. In the present case, however, the defendant employer issued to the employee, Adzima, a voluntary agreement,[4] as required by General Statutes § 31-296, acknowledg-

---

[4] As we noted initially, the deceased did not sign and return the voluntary agreement issued by the defendant employer. The plaintiff cannot, however, seriously argue that the agreement had no effect, or was not binding. The parties stipulated that the agreement had been issued, and a total of forty-five payments were paid and accepted between January 6, 1972, and November 20, 1972. In light of the conduct of the parties in these circumstances, the deceased having retained the benefits paid by the defendants in reliance upon the existence of a voluntary agreement, it cannot be said that the agreement was not valid and binding. *Corriveau* v. *Jenkins Bros.,* 144 Conn. 383, 387, 132 A.2d 67 (1957); *Freda* v. *Smith,* 142 Conn. 126, 134, 111 A.2d 679 (1955); *Skelly* v. *Bristol Savings Bank,* 63 Conn. 83, 87, 26 A. 474 (1893); see *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 406–407, 356 A.2d 181 (1974); *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564–65, 244 A.2d 404 (1968); see, generally, 1 Williston, Contracts (3d Ed. Jaeger) § 3; 5 Williston, Contracts (Rev. Ed.) § 1479; 66 Am. Jur. 2d, Restitution and Implied Contracts § 2.

ing its initial liability to pay compensation, and, in accordance with this agreement, medical services were immediately provided and all compensation payments for disability were paid as directed by Adzima's treating doctors. It is thus evident that there was no "contest" by the employer of its "liability to pay compensation" falling within the purview of General Statutes § 31-297 (b).

We have taken this occasion to again review the legislative history of § 31-297 (b); see *Menzies* v. *Fisher,* supra, 341-47; to determine whether it is necessary or appropriate to extend the "conclusive preclusion of defense" provision of that statute beyond situations where an employer contests its initial liability to pay compensation, to a situation such as the present case, where the employer disputes only the extent of the deceased's disability. We have concluded that no such extension is warranted. First, the statute itself clearly delineates a distinction between liability and disability: "Whenever *liability* to pay compensation is contested by the employer," the employer must file a specific defense. If the employer does not contest liability, it has "no right thereafter to contest the employee's *right to receive compensation* on any grounds or the *extent of his disability.*" (Emphasis added.) The statute clearly speaks to a threshold failure on the employer's part to contest "liability": to claim, for example, that the injury did not arise out of and in the course of employment; see *Menzies* v. *Fisher,* supra, 340; that the injury fell within an exception to the coverage provided by workmen's compensation; see *Draus* v. *International Silver Co.,* 105 Conn. 415, 418, 135 A. 437 (1926); or that the plaintiff was not an employee of the defendant, but an independent contractor; see *Biederzycki* v. *Farrel*

*Foundry & Machine Co.,* 103 Conn. 701, 704, 131 A. 739 (1926). If there is such a failure to contest, both liability, and any substantive claim as to the extent of disability, are precluded. Here, there was no question that Adzima's injury was a compensable injury within the terms of the workmen's compensation statute, i.e., that he had a "right to receive compensation"; the only contest concerned the extent of his lower back disability.

Moreover, in *Menzies,* our discussion of the legislative history of § 31-297 (b), to which we may refer; *Bird* v. *Plunkett,* 139 Conn. 491, 504, 95 A.2d 71 (1953); 2 Sutherland, Statutory Construction (3d Ed.), p. 502; did not identify any intention on the part of the legislature that the "preclusion of defense" provision of § 31-297 (b) was designed to apply beyond a contest over initial liability. The legislature's object in amending § 31-297 (b); see *Menzies* v. *Fisher,* supra, 342–43, quoting 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4035–4037; did not encompass a "preclusion of defense" situation where the only contest between the employer and the injured employee concerned the extent of the employee's disability.[5]

---

[5] In discussing the inadequacies of a general denial of liability in the context of the more demanding provisions of § 31-297 (b), we alluded to the "numerous possible defenses" encompassed in a mere general denial. Significantly, all of these defenses were of a procedural nature going to a lack of work-relatedness (lack of employer-employee status, death due to suicide or homicide, or death due to intervening injury) that would defeat the initial liability of the employer to pay compensation.

Furthermore, the two cases cited in *Menzies* in support of the decision to place the burden on the employer to allege a defense to an employee's claim *both* involved employers who had contested the work-relatedness of the claimant's injury; they did not involve contests over the extent of the claimant's disability. See *Newell* v. *North Anson Reel Co.,* 161 Me. 461, 214 A.2d 97 (1965); *Chapman* v. *Foremost Dairies, Inc.,* 249 S.C. 438, 154 S.E.2d 845 (1967).

Extending *Menzies* to allocate to the employer the burden of contesting the extent of the employee's disability, within twenty days of the receipt of the employee's claim for compensation, would impose upon the employer the burden of developing medical evidence as to the extent of the employee's disability or injury, which otherwise would develop only after a hearing at which the *employee* would have the burden of proving both a compensable injury and the extent of the disability. See *Hills* v. *Servicemaster of Connecticut River Valley, Inc.,* 155 Conn. 214, 216, 230 A.2d 604 (1967); *Woodley* v. *Rossi,* 152 Conn. 1, 4, 202 A.2d 136 (1964). In these circumstances, extending *Menzies* to apply to disability claims would place upon the employer the burden of investigating every subsequent claim of disability, as the medical consequences of an injury unfolded, and would force the employer to carry the burden of nonpersuasion with respect to the existence and extent of those medical consequences. Such a result is neither compelled by General Statutes § 31-297 (b), nor by our decision in *Menzies* v. *Fisher,* supra.

Finally, it is evident that the claim of the plaintiff in this case was for further *disability* payments under General Statutes § 31-308 (m). Recovery of benefits under that section, which allows further payments of compensation for partial incapacity arising out of, inter alia, a back injury, presupposes that the initial liability for compensation has already been accepted: benefits paid under that section would be in the nature of continuing disability payments, arising after acceptance of an employee's initial claim. As such, the plaintiff could properly have sought further payments for disability by means of a motion to modify, under the provisions

of § 31-315 of the General Statutes. That section provides that "[t]he compensation commissioner shall retain jurisdiction over claims for compensation, awards and *voluntary agreements*, for any proper action thereon, during the whole compensation period applicable to the injury in question." (Emphasis added.) Increased incapacity of an employee, a change in the measure of dependence on account of which the compensation is paid, and changed conditions of fact generally are all sufficient to authorize the modification of disability payments under a voluntary agreement. See *Welch* v. *Arthur A. Fogarty, Inc.*, 157 Conn. 538, 546, 255 A.2d 627 (1969); Beers, "Compromise Agreements in Workmen's Compensation; Their Limitations," 16 Conn. B.J. 161 (1942). Thus, a claim for disability, resulting from partial incapacity, under § 31-308 (m) may not be translated into an initial claim for liability to which our holding in *Menzies* v. *Fisher* would apply.

In sum, we find no error in the court's denial of the plaintiff's motion to preclude.

## II

The plaintiff next claims that the court erred in refusing to correct the commissioner's finding by adding thereto sixty-nine admitted or undisputed facts; by refusing to substitute the plaintiff's conclusions for certain conclusions of the commissioner, and in refusing to remand the dispute to the commissioner for further proceedings upon a corrected finding. The plaintiff's argument is that, with the addition of the above facts, the commissioner could not reasonably have concluded that the deceased had not reached a state of maximum improvement with respect to his back injury at the time of his death.

We have reviewed the plaintiff's motion to correct and have determined that, as the commissioner's finding with respect to the state of the deceased's injury was formulated upon the basis of conflicting medical testimony, the addition of certain of the facts contained in the motion would avail the plaintiff nothing.

The plaintiff concedes, as she must, that in order for her to be entitled to an award for the decedent's back injury, that injury must have reached "a state of maximum improvement" at the time of the decedent's death. See *Finkelstone* v. *Bridgeport Brass Co.*, 144 Conn. 470, 472, 134 A.2d 74 (1957); *Panico* v. *Sperry Engineering Co.*, 113 Conn. 707, 714, 156 A. 802 (1931). It would serve no useful purpose to set forth in detail the testimony of the plaintiff's medical expert, Dr. Thomas Cocco, which tended to show that Adzima had reached a state of maximum improvement, which further surgery could not alter, with respect to his back injury. The defendant employer's expert, Dr. Harry P. Engel, a neurosurgeon, testified that Adzima had not reached a medical end result in his back condition, and that further surgical intervention, or nonsurgical therapy, could only improve Adzima's back condition.

We are mindful of the principles underlying Connecticut practice in workmen's compensation cases: that the legislation is remedial in nature; *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 375, 94 A. 372 (1915); and that it should be broadly construed to accomplish its humanitarian purpose. *DeCarli* v. *Manchester Public Warehouse Co.*, 107 Conn. 359, 364, 140 A. 637 (1928). It is still true, however, that the power and duty of determining the facts rests on the commissioner, the trier of facts. *Czep-*

*licki* v. *Fafnir Bearing Co.,* 137 Conn. 454, 457, 78 A.2d 339 (1951). The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Mathurin* v. *Putnam,* 136 Conn. 361, 366, 71 A.2d 599 (1950). Moreover, on review of the commissioner's findings, the trial court does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. Its power in the correction of the finding of the commissioner is analogous to, and its method of correcting the finding similar to, the power and method of the Supreme Court in correcting the findings of the trial court. Practice Book, 1978, § 440; *Jacques* v. *H. O. Penn Machinery Co.,* 166 Conn. 352, 363, 349 A.2d 847 (1974).

It is also well settled in our practice that "[t]he finding of the commissioner should contain only the ultimate, relevant and material facts essential to the case in hand and found by him, together with a statement of his conclusions and the claims of law made by the parties. It should not contain excerpts from evidence or merely evidential facts, nor the opinions or beliefs of the commissioner, nor the reasons for his conclusions. The opinions, beliefs, reasons and argument of the commissioner should be expressed in the memorandum of decision, if any be filed, so far as they may be helpful in the

decision of the case." Practice Book, 1978, § 435; see *Balkus* v. *Terry Steam Turbine Co.,* 167 Conn. 170, 173, 355 A.2d 227 (1974).

In view of the above principles, we cannot say that the court erred in sustaining the commissioner's finding as to the state of the improvement of the decedent's back injury, based as it was on the conflicting expert medical testimony of the parties; nor do we find error in the court's refusal to remand the case for further proceedings on a corrected finding.

There is no error.

In this opinion COTTER, C. J., LOISELLE and PETERS, Js., concurred.

BOGDANSKI, J. (dissenting). I cannot agree that § 31-297 (b), the preclusion statute, is limited to situations in which the employer contests a plaintiff's right to compensation on the grounds that the injury alleged was not compensable because "it did not arise out of and in the course of employment." To my mind the express language of the statute and our decision in *Menzies* v. *Fisher,* 165 Conn. 338, 347, 334 A.2d 452 (1973), both militate against such a narrow interpretation of this statute.

Section 31-297 (b), by its terms, provides that *whenever liability to pay compensation is contested,* the employer *must* file notice of his intention to contest the claim and of the specific reasons therefor. The use of the word "whenever" in this statute is significant. This term, which is used to delimit the applicability of the statutorily required notice of disclaimer, is defined in Webster's International Dictionary, Third Edition, as meaning "at any or

*all* times that; in any or *every* instance in which." (Emphasis added.) Had the legislature intended a narrow application of this statute they would surely have used a more restrictive term such as "when" or "if." Instead, the statute contains the term "whenever," a term which means "in *any or every instance* in which." (Emphasis added.)

In *Menzies,* when this court was first called upon to interpret § 31-297 (b), we focused upon the mischief sought to be remedied by the legislature in enacting the statute, noting that the objective of the legislature was to ensure that employers would bear the burden of promptly investigating claims and that employees would be timely apprised of the specific reasons for denials of their claims.

We observed in *Menzies* (p. 343) that the notice of disclaimer required by § 31-297 (b) was intended to "diminish delays in the proceedings, [to] discourage arbitrary refusal[s] of bona fide claims and [to] narrow the legal issues which were to be contested." Those considerations of public policy, which led to the enactment of the statute, would seem to be as applicable when an employer contests the right of a claimant to receive compensation for a specific injury as when the employer contests the right of a claimant to periodic benefits under the statute for a loss of earnings due to an allegedly work-related injury.

I can see no injustice in the statute's requiring a defending employer or insurance carrier to investigate a case seasonably and to respond specifically to claims as filed. As we stated in *Menzies* (p. 348), "If an employer has . . . grounds for denying liability for compensation, there is no sound reason why he should not be required to advise the claimant

as to the substantive grounds on which liability is denied. The rule . . . requires only the simplest procedure and compliance with it enables the principal issues to be framed before a hearing is commenced."

In my view, an employer's denial of a claim for benefits under the specific injury portion of the workmen's compensation statute is a "contest" of "liability to pay compensation" within the meaning of § 31-297 (b), and as such the statute requires that the employer give notice of his intention to contest the claim, as a precondition to a defense on the merits.