RICHARD BOWMAN *v.* JACK'S AUTO SALES ET AL.
(AC 17376)

O'Connell, C. J., and Lavery and Sullivan, Js.

Argued September 28, 1998—officially released July 27, 1999

*Lorenzo J. Cicchiello,* for the appellant (plaintiff).

*David A. Kelly,* with whom, on the brief, was *James J. Moynihan,* for the appellee (named defendant).

*Opinion*

O'CONNELL, C. J. This is the plaintiff's appeal from the decision of the compensation review board (board). The plaintiff asserts that the board (1) improperly held that he could not receive wholly separate permanent partial disability awards for both his hands and the skin on his hands and (2) exceeded its authority in reversing the decision of the workers' compensation commissioner (commissioner). We affirm the decision of the board.

The genesis of this appeal was an October 26, 1977 incident in which a battery exploded in the plaintiff's hands. The plaintiff, Richard Bowman, and his employer, the named defendant Jack's Auto Sales,[1] entered into a voluntary agreement relating to a partial disability of both of the plaintiff's hands. This voluntary

---

[1] The named defendant has also taken an appeal that is reported in *Bowman* v. *Jack's Auto Sales,* 54 Conn. App. 289, 734 A.2d 1036 (1999).

agreement was approved by a commissioner on December 11, 1981.

The voluntary agreement was based on an impairment rating of 10 percent of both hands provided by Leonard M. Milstone, a dermatologist. Milstone's report, which was annexed to the voluntary agreement, described the extent of disability arising from chronic dermatitis on the backs of the plaintiff's hands. The report indicated that dermatitis was present at all times, required extensive therapy and cautioned that it could be exacerbated by some activities. The voluntary agreement was specific to the hands as the injured body part. Although the plaintiff was paid specific indemnity benefits pursuant to the voluntary agreement, he subsequently filed a claim for additional benefits pursuant to General Statutes § 31-308a. That claim was also based on the injury to the skin on his hands.

At a June 14, 1988 hearing before the same commissioner, the plaintiff sought, inter alia, additional specific indemnity benefits. Philip Goldman, a dermatologist, diagnosed the plaintiff as having chronic eczematous dermatitis. Goldman testified that the plaintiff's hands showed psoriasis that was triggered by the 1977 battery acid exposure. Goldman assessed the plaintiff with a 5 to 10 percent permanent impairment of the "whole man" in accordance with the American Medical Association guidelines. The commissioner relied on Goldman's assessment, converted Goldman's rating of impairment to the whole man into a rating of impairment to the skin as it relates to the whole body and awarded the plaintiff 78 weeks of benefits with a credit of 48.4 weeks already paid by the employer under the voluntary agreement.

The plaintiff appealed to the board from the commissioner's ruling, and the board remanded the case to the commissioner for further findings on two issues: (1)

whether the plaintiff suffered a new injury in 1985; and (2) on what basis did the commissioner credit the employer for 48.4 weeks of compensation paid. In a corrected finding dated July 9, 1996, the commissioner reversed his prior award with respect to the 48.4 week credit concluding that the 10 percent disability to the plaintiff's hands described in the voluntary agreement was different from the 10 percent impairment to the skin on the hands subsequently assessed by the commissioner.

The defendant and its workers' compensation insurer appealed to the board, which reversed the commissioner's corrected finding as to the elimination of credit. The gravamen of the board's decision is that the commissioner's ruling was erroneous because both permanency awards were for the same injury to the same body part. The plaintiff argues that his claim for injury to his hands is not the same as his claim for injury to the skin on his hands. He contends that the skin on the hands and the hands are separate and distinct body parts and that he is entitled to separate benefits for an injury to each body part. We are not persuaded.

I

It is axiomatic that "[o]ne of the purposes of the workers' compensation statute is the avoidance of two independent compensations for the injury . . . ." (Citation omitted; internal quotation marks omitted.) *Enquist* v. *General Datacom*, 218 Conn. 19, 26, 587 A.2d 1029 (1991). The policy of the law prohibits double recovery under the Workers' Compensation Act. *Gurliacci* v. *Mayer*, 218 Conn. 531, 570, 590 A.2d 914 (1991).

Goldman declined to give a percentage rating to the plaintiff's hands. Rather, he would give only a rating of a 5 to 10 percent impairment of the whole man. The whole man system of rating disabilities has been considered previously and rejected by the board. The board

has stated in the past that "our Workers' Compensation Act does not provide for an award of benefits on the basis of a whole-man rating . . . . However, the consideration of such ratings in reaching a decision as to the percentage loss of or loss of use of function is permitted under the broad discretionary powers granted to a commissioner in making such assessments." (Citations omitted; internal quotation marks omitted.) *Piscitelli v. Connecticut Coke/Eastern Gas & Fuel*, 6 Conn. Workers' Comp. Rev. Op. 94, 96 (1989). A commissioner may, therefore, consider the effect of an injury on a person's overall ability to function in determining the disability rating, but the award itself is for impairment to the body part, not to the whole man. Id.; see also *Repasi v. Jenkins Bros.*, 4 Conn. Workers' Comp. Rev. Op. 82 (1987), appeal dismissed, 16 Conn. App. 121, 546 A.2d 965, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988). Accordingly, when the commissioner relied on the whole man theory he was acting in derogation of existing board decisions.

We are mindful of the fact that there apparently has been no Appellate or Supreme Court case determining whether Connecticut recognizes the whole man theory. It is, however, the policy of the courts to give great deference to the construction of a statute by the agency charged with its administration. *E.I.S., Inc. v. Board of Registration*, 200 Conn. 145, 148, 509 A.2d 1056 (1986). This policy has been applied specifically by our Supreme Court in interpreting General Statutes § 31-308 (b). In *Misenti v. International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990), our Supreme Court held that, "the compensation review division's rejection of this claim of law is, at the very least, a reasonable construction of § 31-308 (b) that warrants respect as the considered judgment of the governmental agency vested with primary authority for enforcing our workers' compensation statutes." (Internal quotation marks

omitted.) Under the circumstances of this case, we are not persuaded that we should reject the established policy of the board and adopt the whole man theory as part of the workers' compensation law of this state.

We agree with the board that there was no evidence to support a conclusion that the second award was for anything other than the same condition covered by the first award. Accordingly, the board properly determined that the defendant was entitled to a 48.4 week credit toward the 1988 award for the compensation previously paid to the plaintiff pursuant to the voluntary agreement.

## II

The plaintiff also claims that by reversing the commissioner, the board exceeded its authority by invading the commissioner's fact-finding function. It is elementary that the duty of finding facts rests with the commissioner; *Czeplicki* v. *Fafnir Bearing Co.*, 137 Conn. 454, 457, 78 A.2d 339 (1951); and that the board hears the appeal on the record and does not retry facts. *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 118, 411 A.2d 924 (1979). "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988).

As stated previously in this decision, the Workers' Compensation Act of this state does not provide for a separate award of benefits based on an impairment of the whole man. Accordingly, we conclude that the commissioner incorrectly applied the law to the subordinate facts and, thus, the board properly determined that the conclusion of the commissioner could not stand. The board did not exceed its appellate authority in reversing the decision of the commissioner.

The decision of the workers' compensation review board is affirmed.

In this opinion SULLIVAN, J., concurred.

LAVERY, J., concurring. I concur with the result reached by the majority. I write separately, however, because I believe the decision of the board can be affirmed without addressing the issue of impairment to the plaintiff's whole person.[1] The facts of this case do not require that we address the question of a permanent impairment to the whole person.

The following additional facts are necessary to understand the procedural history of this case. In April, 1993, the plaintiff sought additional workers' compensation benefits on the theory that either (1) he was totally disabled or (2) that he had suffered additional permanent partial impairment amounting to 10 percent of the whole person by virtue of hypertension, 45 to 50 percent loss of use of the dominant hand and 40 to 45 percent loss of use of the nondominant hand. Following a hearing, the commissioner issued a finding and award in which he made the following findings based on the subordinate facts in the award. The plaintiff has a 5 to 10 percent impairment of the skin as it relates to the whole person, using the Guides to the Evaluation of Permanent Impairment (4th Ed. 1993), published by the American Medical Association. The plaintiff's permanent partial impairment substantially flows from the 1977 compensable injury involving the defendant

---

[1] The board and the majority use the term "whole man," which I believe to be as outdated as the term "workmen's compensation." The term "whole body" is used by our courts in personal injury actions. See *Quednau* v. *Langrish*, 144 Conn. 706, 716, 137 A.2d 544 (1957) (*Daly*, J., dissenting); *Fazio* v. *Brown*, 14 Conn. App. 289, 291, 540 A.2d 1065 (1988), rev'd on other grounds, 209 Conn. 450, 551 A.2d (1989). The term "whole person" is used by the American Medical Association. See Guides to the Evaluation of Permanent Impairment (4th Ed. 1993), published by the American Medical Association.

employer. The plaintiff has not looked for work since January, 1987. Even though he has reading and writing limitations,[2] the plaintiff has a residual earning capacity. Because of the plaintiff's age, lack of skills and limited education, the permanent physical impairment has had an effect on him that is greater than on other individuals. The commissioner found that the plaintiff is entitled to additional compensation due to the permanent partial impairment. The commissioner concluded that the plaintiff was entitled to additional compensation benefits of 78 weeks, for which the employer was due a credit of 48.4 weeks.

The issue before us is whether the plaintiff should be awarded additional compensation because he has lost the use of his hands or whether he suffers a permanent partial impairment of his whole person because of the debilitating, chronic condition of the skin on his hands. This case is on point with and controlled by *Misenti* v. *International Silver Co.*, 215 Conn. 206, 575 A.2d 690 (1990). In *Misenti*, the plaintiff suffered dermatitis on both of his hands as a result of his exposure to chemicals and mechanical friction during the course of his employment as a plumber at the defendant's place of business. As a result, the plaintiff's hands were "permanently partially disabled, in that restricted motion and desensitization of the hands and fingers prevent use of the hands for work . . . ." Id., 208.

The *Misenti* employer challenged the commissioner's award contending that the plaintiff "had failed to establish a disability of his hands, as opposed to his skin, and that he was therefore not entitled to recover specific benefits for impairment of his hands"; id.; because the origin of the disability was "dermatological, rather than

[2] The subordinate facts found by the commissioner demonstrated that the plaintiff has an eighth grade education, has third grade reading skills and sixth grade mathematics skills. Also, automobile transmission repair work exacerbates the plaintiff's skin problems.

orthopedic or neurological." Id., 209. The plaintiff before us now makes the opposite argument. He claims that he is unable to move his hands and fingers as a result of a disabling condition of his skin and seeks an award for the condition of his skin. The commissioner made no finding that the skin on other parts of the plaintiff's body was affected.[3]

The truth of the matter is that the plaintiff is disabled because he cannot use his hands. A hand is a body part comprised of multiple organ systems, including circulatory, dermatological, neurological and orthopedic. An injury or disease affecting any one of those organ systems could render a plaintiff's hands disabled. General Statutes § 31-308a provides compensation for the loss of the use of a member or organ. The commissioner made no finding that the plaintiff lost the use of his skin. The commissioner found that the plaintiff lost the use of his hands due to a skin condition. For this reason, I would affirm the decision of the board.

---

[3] We need not decide here the type of award a work-related injury affecting the skin of an employee's entire body would require.