WALLACE J. BALKUS *v.* TERRY STEAM TURBINE
COMPANY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued June 5—decision released August 27, 1974

*Paul M. Palten,* for the appellant (plaintiff).

*Edward D. O'Brien, Jr.,* for the appellees (defendants).

BOGDANSKI, J. This is an appeal from a Superior Court affirmance of a workmen's compensation commissioner's corrected finding and award. Wallace J. Balkus, the claimant and appellant, was employed as a tool and die maker by the respondent employer, Terry Steam Turbine Company. On May 12, 1968, the claimant was forcefully struck in the back by a heavy metal casting with which he was working. Over the next three days the claimant experienced chest pains and difficulty in breathing, and on May 21, 1968, he was hospitalized for a collapsed right lung (pneumothorax). An intercostal thoracotomy was performed on the lung. After a period of convalescence, the claimant returned to work on July 15, 1968, and continued to work intermittently, though he still experienced occasional difficulty in breathing. On December 18, 1968, he was rehospitalized for a collapsed right lung, and a lobectomy, involving the removal of part of the lung, was performed. The claimant returned to work on July 15, 1969.

On April 20, 1971, the compensation commissioner found that the injury and its consequences were compensable and that "the claimant has a 25% loss of function of his right lung." The commissioner awarded Balkus compensation for his medical bills, his temporary period of total disability, and his permanent partial disability. The parties dispute that portion of the award referable to his permanent partial disability (his collapsed lung). After a remand from Superior Court requiring him to correct his finding, the commissioner concluded: "Tak-

ing into account the age and sex of the claimant, the disabling effects of the 25% loss of or loss of function of the claimant's right lung, and the necessity of the lung or complete functioning of the lung with respect to the entire body, I Award the claimant 50 weeks compensation for said loss of or loss of function of the right lung as provided by Section 31-308 of the Workmen's Compensation Act, as amended in 1967."

Balkus also claimed attorney's fees and interest on the award from the date of the injury. The finding and award as to those claims were also corrected on remands from the Superior Court. Ultimately, the commissioner declined to award interest, on the ground that delay in payment of compensation had been caused by "the nature of the claim and the medical problems involved" and not by the fault or neglect of the employer or the insurer (the respondents); and he awarded partial attorney's fees in the amount of $1750 on the ground that at the formal hearing the respondents had contested the extent of disability,[1] although he also found that they had not unreasonably contested liability.

The Superior Court sustained the finding and award as thus finally corrected and the claimant has appealed to this court. He argues that the Superior Court erred in refusing to correct the commissioner's finding by adding certain facts, and in sustain-

---

[1] The award of attorney's fees was predicated on General Statutes § 31-298, which formerly provided for such an award for representation at the formal hearing when liability or the extent of disability was contested. That provision was held to have been repealed by implication in *Menzies* v. *Fisher*, 165 Conn. 338, 350, 334 A.2d 894. The respondents have not, however, appealed the award of attorney's fees, and it stands.

ing the commissioner's determinations as to interest, attorney's fees, and the amount of the permanent partial disability award.

It is unnecessary to discuss each proposed addition to the commissioner's finding separately. All but three[2] of the proposed additions are either evidential facts or are in the nature of reasons for the commissioner's conclusions. Practice Book § 432 provides: "The finding of the commissioner should contain only the ultimate, relevant and material facts essential to the case in hand and found by him, together with a statement of his conclusions and the claims of law made by the parties. It should not contain excerpts from evidence or merely evidential facts, nor the opinions or beliefs of the commissioner, nor the reasons for his conclusions. The opinions, beliefs, reasons and argument of the commissioner should be expressed in the memorandum of decision, if any be filed, so far as they may be helpful in the decision of the case." The claimant is not entitled to any of the aforementioned corrections of the commissioner's finding.

Before turning to the substantive errors asserted by the claimant, we first review the pertinent principles which govern judicial review of the commissioner's finding and award.[3] "The [Superior] court does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose

---

[2] Three proposed corrections are conclusions or ultimate facts which the commissioner rejected. Their merit is discussed in the body of this opinion, infra.

[3] Cf. General Statutes § 4-183, the judicial review section of the Uniform Administrative Procedure Act. Although § 4-183 does not govern this appeal, the principles of judicial review stated in the text of this opinion are not inconsistent with that section.

of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. Its power in the correction of the finding of the commissioner is analogous to, and its method of correcting the finding similar to, the power and method of the supreme court . . . in correcting the findings of the trial court."[4] Practice Book § 435; *Jacques* v. *H. O. Penn Machinery Co.,* 166 Conn. 352, 363, 349 A.2d 847. The commissioner's ultimate conclusions are tested by the subordinate facts found, and they stand unless they result from an incorrect application of the law to those facts or from an inference illegally or unreasonably drawn from them. *D'Angelo* v. *Connecticut Light & Power Co.,* 146 Conn. 505, 508, 152 A.2d 636; *Acquarulo* v. *Botwinik Bros., Inc.,* 139 Conn. 684, 687, 96 A.2d 752. For a discussion of appellate review in workmen's compensation cases, see Maltbie, Conn. App. Proc. §§ 248–258.

The claimant's first contention is that the commissioner's award of fifty weeks compensation for his collapsed lung was inadequate and based on improper and inadequate evidence. Under General Statutes § 31-308, "the commissioner may award such compensation as he deems just for the loss or loss of use of the function of any organ or part of the body not otherwise provided for herein, taking into account the age and sex of the claimant, the

---

[4] This court will correct findings of fact only upon the refusal to find a material fact which was admitted or undisputed, or upon the finding of a material fact without evidence, or, rarely, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear. Practice Book § 628.

disabling effect of the loss of or loss of function of the organ involved and the necessity of the organ or complete functioning of the organ with respect to the entire body, but in no case more than the sum equivalent to compensation for seven hundred and eighty weeks." The claimant contends that from the medical evidence before him the commissioner was required to find that the claimant was twenty-five percent disabled and to award compensation equaling twenty-five percent of 780 weeks, or 195 weeks.

There was medical evidence before the commissioner which would have supported a finding that the claimant was twenty-five percent disabled. However, there was other medical evidence from which the commissioner could have concluded, as he did, that the claimant had a twenty-five percent loss of function in his right lung, but was not actually twenty-five percent disabled. Raphael L. Kemler, the surgeon who operated on the claimant, testified on direct examination that "he does have a loss of function of his right lung, referrably [sic] to breathing, of twenty-five percent." Asked "what effect that would have with respect to his general activities?" Kemler responded, "I think ordinary activities he should be able to do without any trouble, walking, driving, things of that kind, but any exertion, I think he would notice would make him short of breath more easier [sic] than a normal person would be." Asked about any other effects, Kemler said he could think of none. On cross-examination, Kemler emphasized: "I said he has loss of twenty-five percent of his lung function, I specifically said that. This would affect his general body function, but I did not mean that he has

twenty-five percent loss of general body function." He was also asked whether, "from a standpoint of age, 36 at the time, . . . his activities would certainly intend [sic] to be limited?" He responded, "Very minimal. I am taking this into account, his limitation as it is, and his limitation at his age." In addition to Kemler's testimony, the fact that the claimant returned to work could also have been considered by the commissioner as bearing on the extent of the disability. The courts will not review the weight which the commissioner attributed to the evidence. Practice Book § 435. The award is adequately supported by the subordinate facts found.

The claimant also argues that the commissioner relied on improper evidence in assessing compensation for the collapsed lung at fifty weeks. The claim that the commissioner considered improper evidence which might have substantially affected the result may be presented on appeal. Properly, the commissioner's ruling should appear in his finding. See Maltbie, Conn. App. Proc. § 249; *Bourget* v. *Overhead Door Co.,* 121 Conn. 127, 133, 183 A. 381. In this case the claimant did not request that the ruling be incorporated in the finding, and it does not appear there. However, at the claimant's request, the commissioner did certify the transcript, in which the ruling appears, and we are satisfied that appellate review of the question can proceed.

The respondents offered a letter from the chairman of the workmen's compensation board to another compensation commissioner in which it was stated that the commissioners had agreed on a standard compensation of 175 weeks for the loss of a lung. The board chairman did not testify. The letter was accepted by the commissioner.

Workmen's compensation commissioners are not "bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter." General Statutes § 31-298. Nonetheless, procedural due process is a requirement of adjudicative administrative hearings, including those held before workmen's compensation commissioners, and the admission of hearsay material such as letters without an opportunity to cross-examine is ordinarily a deprivation of procedural due process.[5] *Richardson* v. *Perales,* 402 U.S. 389, 402–7, 91 S. Ct. 1420, 28 L. Ed. 2d 842; *Goldberg* v. *Kelly,* 397 U.S. 254, 267–70, 90 S. Ct. 1011, 25 L. Ed. 2d 287; *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 212, 257 A.2d 795; *Conley* v. *Board of Education,* 143 Conn. 488, 495, 123 A.2d 747. The letter in this case related to a principal issue in dispute, the extent of the disability resulting from the claimant's collapsed lung. So far as the record indicates the letter was not admissible by virtue of any inherent reliability and probative value. Cf. *Richardson* v. *Perales,* supra.

Had the claimant made a timely objection based on the hearsay character of the letter or on his inability to cross-examine its author, its admission by the commissioner would have been reversible error. So far as the record shows, however, no such

---

[5] Cf. the Uniform Administrative Procedure Act, which provides that in "contested cases," "when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form; . . . Upon request, . . . a party may conduct cross-examinations required for a full and true disclosure of the facts . . . ." General Statutes § 4-178 (amended by Public Acts 1973, No. 73-620).

objection was made. Counsel for the claimant objected "[j]ust as a matter of form. I never saw that letter before." Nor, as demonstrated above, is the commissioner's award unsupported by substantial evidence[6] apart from the letter. The award must stand.

The claimant next argues that he is entitled to an award for reasonable attorney's fees on the ground that the commissioner erred in finding that the respondents had not unreasonably contested liability. General Statutes § 31-300 provides that "[i]n cases where the claimant prevails and the commissioner finds that the employer or insurer has unreasonably contested liability, the commissioner may allow to the claimant a reasonable attorney's fee." The claimant's principal argument[7] is that it was unreasonable for the respondents to contest liability because all the medical reports in their

---

[6] Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126; *Richardson* v. *Perales*, supra, 401; *Imperial Laundry, Inc.* v. *State Board of Labor Relations*, 142 Conn. 457, 461–62, 115 A.2d 439. "Mere uncorroborated hearsay . . . does not constitute substantial evidence." *Consolidated Edison Co.* v. *National Labor Relations Board*, supra, 230.

[7] The claimant also argues that the respondents' notice denying liability was defective because it failed to state "the specific grounds" on which the right to compensation was contested, as required by General Statutes § 31-297 (b). Under *Menzies* v. *Fisher*, 165 Conn. 338, 341–48, 334 A.2d 452, a defective notice disentitles the employer and its insurer from contesting liability to pay compensation. However, under § 31-297 (b) the employer's obligation to file a proper notice is conditioned on his prior receipt of a written notice of claim. As was noted by the Superior Court, nothing in the record shows that that written notice was sent, and the claimant has not so alleged. In these circumstances we are of the view that the claimant cannot now take advantage of the respondents' claimed omission.

possession supported the claimant's action. The respondents had been informed by the physician who examined the claimant at their request that "[t]he sequence of events in this case leads me to believe that the right pneumothorax was probably initiated by the injury sustained at his work"; and they had been notified by Kemler that the accident was the sole cause of the collapsed lung.

A main factual issue before the commissioner pertaining to liability was whether the trauma admittedly sustained by the claimant on May 17, 1968, was sufficient to produce a pneumothorax on May 21, 1968. The respondents argued that the location of the point of impact on the claimant's back and its severity could not have caused the collapsed lung. There was disagreement among the witnesses as to the precise location of the injury, and Kemler testified that a trauma in one area of the claimant's back where the impact might have been found to occur would not have produced a spontaneous pneumothorax. Although the lack of supporting medical opinion was certainly an element to be weighed in deciding whether the contest of liability was unreasonable, we cannot say that it should have concluded the issue. The commissioner was in a position to hear all the relevant testimony, and he could best decide whether the respondents' contention found support in the evidence. On the basis of what appears in the record before us and in the appendices to the parties' briefs, we cannot conclude that the commissioner erred in finding that the contest of liability was not unreasonable.[8]

---

[8] Having so held, we are not called upon to consider the reasonableness of the attorney's fees actually awarded by the commissioner. *Menzies* v. *Fisher,* supra, 349. We do note that where attorney's fees are properly awarded, their reasonableness depends upon many

The claimant's remaining argument is that the commissioner erred in refusing to allow interest on the award from the date of the injury. It is undisputed that the respondents did not pay any compensation to the claimant until after the commissioner rendered his finding and award.[9] General Statutes § 31-300 provides: "In cases where, through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed, . . . the commissioner may include in his award interest at six per cent per annum. In cases where there has been delay in either adjustment or payment, which delay has not been due to the fault or neglect of the employer or insurer, whether such delay was caused by appeals or otherwise, the commissioner may allow interest at such rate, not to exceed six per cent per annum, as may be fair and reasonable, taking into account whatever advantage the employer or insurer, as the case may be, may have had from the use of the money, the burden of showing that the rate in such case should be less than six per cent per annum to be upon the employer or insurer."

The payment of interest on the award is for the pre-award period only. See *McIntyre* v. *Standard Oil Co. of New York, Inc.*, 126 Conn. 491, 497, 12 A.2d 544. Since the employer's obligation to pay

factors, including the amount of preparation required, the novelty of the questions presented and the intricacy of the case, customary charges for similar services, and the results actually obtained. See 3 Larson, Workmen's Compensation Law § 83.13, pp. 354.46–354.49. An attorney's fee is not necessarily excessive because it exceeds the size of the award; nor is a contingency fee arrangement necessarily contrary to the policy of the statute. See 3 Larson, supra, and cases there cited.

[9] Payment was first tendered on November 10, 1971, pursuant to a Superior Court order under General Statutes § 31-301.

compensation became fixed on the date of injury; *Everett* v. *Ingraham,* 150 Conn. 153, 157, 186 A.2d 798; interest paid on the award under General Statutes § 31-300 is for the period beginning on that date and ending on the date of the award. In the present case, that period is just under three years.

We cannot say that the commissioner erred in finding that the delay in payment or adjudgment of compensation was not caused by the fault or neglect of the employer or insurer, in part for the same reasons that we could not conclude that the contest of liability was necessarily unreasonable, and also because the claimant has not directed our attention to any evidence of the respondents' fault or neglect. General Statutes § 31-300 does also permit an allowance of interest even where no fault is to be attributed. The matter is committed to the commissioner's discretion, however, and the statute does not compel the commissioner to award interest where there has been a delay. Although three years is a disturbingly long duration between injury and award, we cannot say the commissioner abused his discretion in denying interest. The commissioner stated that the delay in payment of compensation "was caused by the nature of the claim and the medical problems involved and in the opinion of the Commissioner, does not warrant the assessment of interest." The commissioner thus exercised his discretion, and his reasons for denying interest were not improper or unfounded.

There is no error.

In this opinion the other judges concurred.