MICHAEL RUTLEDGE *v.* STATE OF CONNECTICUT

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1474

Argued May 18—decided June 17, 1983

*Robert G. Girard,* assistant attorney general, for the appellant (state).

*David J. Morrissey,* for the appellee (plaintiff).

DALY, J. This is an appeal by the defendant employer from the decision of the compensation review division (CRD) affirming a finding and award for the plaintiff by the workers' compensation commissioner for the second district. The defendant claims that the commissioner and the CRD erred in concluding that the plaintiff's heart attack occurred during the course of his employment.

The following facts were found in the proceedings below: On January 28, 1978, the plaintiff, a resident

state policeman of the town of Old Lyme, was invited to and attended a post-election testimonial party for the defeated first selectman. During the affair, heated words were exchanged between the plaintiff and another person concerning the funding of a police patrol boat and the role it played in contributing to the defeat of the former first selectman. Following this discussion, the plaintiff became ill, suffered chest pains and was eventually hospitalized and diagnosed as having sustained a myocardial infarction.

The plaintiff's official work week was 40 hours during which he performed customary police duties. He also answered calls after regular hours at his home. In addition, he acted as the liaison between the first selectman of Old Lyme and the state police barracks at Westbrook. Part of the duties of a resident state policeman entails maintaining and improving relations between the state police and local officials. The Westbrook barracks commander and a former state police commissioner shared this view. Attendance at social functions involving present or past town officials falls within such ambit.

The sole issue before us is whether the commissioner and the CRD properly concluded that the plaintiff's heart attack was one "arising out of and in the course of his employment" within the meaning of General Statutes § 31-284[1] and was therefore compensable. " 'Arising out of and in the course of his employment' means an accidental injury happening to an employee or an occupational disease of such employee originating

---

[1] "[General Statutes] Sec. 31-284. BASIC RIGHTS AND LIABILITIES.

"(a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or his intoxication."

while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or while so engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer." General Statutes § 31-275 (12).

"In ascertaining the scope of the employment, we consider what duties were required of the employee and the conditions surrounding the performance of his work, together with whatever else he actually did with the knowledge and assent of the employer." *Farnham* v. *Labutis,* 147 Conn. 267, 270, 160 A.2d 120 (1960).

"Where an employer merely permits an employee to perform a particular act, without direction or compulsion of any kind, the purpose and nature of the act becomes of great, often controlling significance in determining whether an injury suffered while performing it is compensable." *Smith* v. *Seamless Rubber Co.,* 111 Conn. 365, 368, 150 A. 110 (1930). "If the injured party was engaged in doing an act which had no direct or incidental relation to his employment, the injury resulting from it is not compensable. Even though the activity of an employee is outside the obligation of his employment, an injury connected with the activity is compensable if the activity was permitted by the employer for the mutual benefit and convenience of both the employee and employer." *Farnham* v. *Labutis,* supra.

The commissioner and the CRD concluded that attendance at social functions such as this was a reasonable part of the plaintiff's public relations duties and incidental to his employment. The ultimate conclusions reached by the commissioner "are tested by the subordinate facts found, and they stand unless they result from an incorrect application of the law to those facts

or from an inference illegally or unreasonably draw from them." *Balkus* v. *Terry Steam Turbine Co.*, 167 Conn. 170, 174, 355 A.2d 227 (1974).

We cannot retry the case upon the basis of the conclusion which we might ourselves draw from the subordinate facts, and we cannot say that the commissioner made an incorrect application of legal principles or violated the rules of reason or logic in reaching the conclusion he did. We cannot, therefore, find error in the action of the CRD in sustaining the award. *Wilder* v. *Russell Library Co.*, 107 Conn. 56, 63, 139 A. 644 (1927).

There is no error.

In this opinion F. HENNESSY, J., concurred.

BIELUCH, J. (dissenting). The commissioner improperly concluded that the plaintiff's heart attack was a compensable injury. His finding that the plaintiff's attendance at a local social or political testimonial for a former town official arose "out of and in the course of his employment" by the defendant as a state trooper assigned to the town of Old Lyme because it lacked an organized police force is an unwarranted and improper application of the Workers' Compensation Act.

Under the provisions of General Statutes § 29-5, "[t]he commissioner of public safety shall exercise such supervision and direction over any resident policeman so appointed as he deems necessary, and each appointee shall be required to conform to the requirements of chapter 67 [State Personnel Act]. Each resident state policeman shall have the same powers as officers of the regular police force and be entitled to the same rights and subject to the same rules and regulations as the division of state police within the department of public safety." The hours of work of a state policeman are

limited by law. No state policeman shall be required to be on active duty for more than five days a week, except in case of emergency, and the workweek, including home-to-duty station and duty station-to-home time shall not exceed an eight-week average of forty hours per week. General Statutes § 5-246. Social functions are not within the framework of the state police workweek.

The compensation award of the commissioner to the plaintiff is an act of benevolence unwarranted by the law.

For these reasons, I dissent from the majority opinion and would find error in the finding and award of the compensation review division.