EMIL FREDA *v.* WALTER H. SMITH, EXECUTOR (ESTATE OF GEORGE H. WOODWARD)

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 14, 1954—decided February 8, 1955

*William L. Beers* and *Charles M. Lyman,* with whom, on the brief, were *Clarence W. Bronson* and *John N. Reynolds,* for the appellant-appellee (defendant).

*John H. Filer,* with whom, on the brief, were *John B. Grant* and *Donald F. Keefe,* for the appellant-appellee (plaintiff).

DALY, J. The finding is not subject to material correction. The Orange Hills Country Club, Inc., hereinafter called the corporation, was the owner of a sizable tract of land in Orange on which a golf course and a clubhouse were located. The course was open to any member of the public who wished to play and who paid a greens fee. There was also conducted on the property a concession for the sale of golfing equipment, soft drinks and refreshments. The realty was incumbered by a first mortgage to the Union and New Haven Trust Company in the principal amount of $12,000 and by a second mortgage in the principal sum of $9000 to George H. Woodward, the defendant's decedent, and two other

men. In 1937, the first mortgage was in default and taxes were unpaid. The plaintiff, as an officer of the bank, became a member of a committee composed of Walter H. Smith and other owners of stock in the corporation. Their purpose was to devise a method of working out the default. The decedent, who at the time was the president of the corporation, was not a member of the committee. He could neither read nor write and was incapable of handling the corporate business and financial affairs.

In 1941, the default having been cured, the plaintiff withdrew from the committee and ceased to act for the bank in supervising the business affairs of the corporation. The interest on the second mortgage had then been in default for five years. Early in 1942, the decedent, who was operating the concession, became the owner of twenty-two or twenty-three of the twenty-five outstanding shares of stock in the corporation. By foreclosure of the second mortgage, he became the owner of the property in June, 1945. He died on January 26, 1948. An administrator of his estate was appointed and served until November 8, 1948, when a will, dated February 16, 1933, was discovered. It was admitted to probate and Walter H. Smith qualified as executor. The inventory of the estate, of the total value of $37,796.18, consisted of cash, various items of personalty, and realty appraised at $40,550, less an outstanding mortgage of $11,000.

On July 27, 1950, the estate having been represented as insolvent, commissioners were appointed and the plaintiff's claim, among others, was delivered by the executor to them.

In his claim, the plaintiff stated that between March, 1942, and January 26, 1948, he rendered valuable business services to the decedent; that the dece-

dent sought his assistance and advice in acquiring full ownership of the second mortgage on the real estate of the corporation; that with his assistance and advice, the decedent began purchasing golf course equipment; that they agreed orally that the plaintiff would take care of the business matters and that the decedent would attend to the actual operation and maintenance of the course; that their agreement provided that after the business had reached the point where it was profitable each would receive one-half of the net earnings and that in the event of a sale of the property, both real and personal, one-half of the net proceeds would be paid to each of them; that the decedent agreed to provide by will for the sale of the real and personal property and for the payment to the plaintiff of one-half of the net proceeds; that pursuant to the agreement the decedent, by foreclosure, took over the full possession and ownership of the property on June 21, 1945, and thereafter, until his death, operated the golf course; that, in connection therewith, the plaintiff advised him on every business transaction and handled all of the business details; and that, although the plaintiff had never received any payment for the services rendered, the decedent had failed to provide by will for the plaintiff as agreed. In and by his claim the plaintiff sought one-half of the value of the golf course real and personal property.

On November 19, 1951, the report of the commissioners, disallowing the plaintiff's claim, was accepted by the Probate Court, and the plaintiff appealed to the Superior Court, where he filed a statement consisting of four counts. In the first he alleged an express contract substantially the same as that stated in the claim disallowed by the commissioners. In the second, it was alleged that by the decedent's

failure to execute a will providing for the sale of the property and payment to the plaintiff of one-half of the proceeds the decedent wrongfully appropriated the property to himself and his estate. In the third, an accounting was requested. The fourth count was based on quantum meruit. The trial court found the issues for the plaintiff on the fourth count and for the defendant executor on the other three. The defendant and the plaintiff have appealed from the judgment.

In his second special defense, the defendant alleged that the plaintiff had due legal notice of the hearings held by the commissioners on the insolvent estate of the decedent, that he was given an opportunity to be heard by them but that he at no time presented evidence to the commissioners. The plaintiff demurred to this defense on the ground that the only duty which he owed to the commissioners was to exhibit his claim and that their report showed that this was done. The demurrer was sustained, and the first question for our consideration is whether the court erred in this respect.

The defendant maintains that the plaintiff, by his failure to present evidence, did not exhibit his claim to the commissioners as required by § 7004 of the General Statutes.[1] The word "exhibit" is not am-

---

[1] "Sec. 7004. CLAIMS NOT EXHIBITED ARE BARRED. NEWLY DISCOVERED ASSETS. Each creditor of an insolvent estate who shall not exhibit his claim to the commissioners within the time limited shall be barred of his claim against such estate. . . ."

It should be pointed out that while both parties assume that this statute is applicable, we have some doubt of its applicability. It appears to be a statute of nonclaim barring claims not presented to the commissioners within the time limited under § 7002 for presentation of claims to the commissioners. But from the chronology of the steps taken in the Probate Court as described in the finding it would appear that the commissioners in the present case must have been appointed under § 7000 after the time for presenting

biguous. It means "[t]o display; as: . . . To present for consideration." Webster's New International Dictionary (2d Ed.); see *Diehl* v. *Becker,* 227 N.Y. 318, 323, 125 N.E. 533. The plaintiff did exhibit his claim to the commissioners. The statute did not require him to offer proof of his claim to them. The court did not err in sustaining the demurrer. The appeal nullified the commissioners' decision as completely as if it had never been rendered, imposed upon the plaintiff the necessity of proving his claim in the Superior Court and threw upon that court the task of hearing the matter de novo. *Silverstone* v. *Lillie,* 141 Conn. 104, 108, 103 A.2d 915; *Cothren's Appeal,* 59 Conn. 545, 548, 22 A. 297.

The defendant maintains that the claim of the plaintiff which was disallowed by the commissioners does not support a judgment in quantum meruit. He contends that, since that original claim was based upon an express contract, the plaintiff changed his ground of action in alleging, in the fourth count, a claim resting upon an implied contract. In the claim which the plaintiff first presented to the administrator of the decedent's estate, he set forth facts which he asserted entitled him to recover. As he relied upon the same facts in the Superior Court, he could recover on the theory which justified a recovery on those facts, whether that theory was express contract or implied contract. *Duvall* v. *Birden,* 124 Conn. 43, 48, 198 A. 255; see Practice Book § 33.

The trial court found that the plaintiff rendered his services to the decedent in the expectation that he would be compensated for them and that the dece-

claims to the administrator had expired. The applicable statute of nonclaim would therefore appear to be § 6990 rather than § 7004. We will, however, decide the question on the theory on which it has been presented to us.

dent by accepting them impliedly agreed to pay the plaintiff the reasonable value of them. The defendant, in his assignment of errors, states that the court erred in so finding. He has not attacked the subordinate facts from which these conclusions were drawn. The plaintiff had been an officer of banks in New Haven for thirty-one years and at the time of the decedent's death was an assistant vice president of the Union and New Haven Trust Company, receiving an annual salary of $7000. The court found that he had spent about 2000 hours in rendering services to the decedent in connection with his business affairs and had, besides, performed certain special services for him.

Between April 5, 1943, and December 31, 1945, when the corporation ceased to exist, the conduct of the golf course business was carried on by the decedent and the plaintiff nominally as a corporate enterprise, but in fact it was a personal undertaking. The decedent continuously consulted with the plaintiff, obtaining business advice. The plaintiff worked as the supervisor and adviser in the business management and operation of the club. He assumed the duties of keeping the club checkbook, making bank deposits and social security reports, compiling pay rolls, arranging for accountants to prepare income tax returns, furnishing figures for those returns, and receiving and examining the reports which the accountants made to the decedent. The plaintiff arranged for seasonal loans and for the purchase of supplies. He handled all correspondence, hired and discharged employees and secured necessary insurance coverage. In addition, he arranged for the building of a new road, for the installing of a pumping system, for the improvement of greens and for acquiring a number of new items of equipment.

No conclusion of the trial court can be disturbed by this court unless it appears either that it involves the application of some erroneous rule of law material to the case or that it was unreasonably drawn from the subordinate facts found. *Johnson v. Shattuck,* 125 Conn. 60, 62, 3 A.2d 229; *Davis v. Margolis,* 107 Conn. 417, 422, 140 A. 823. In view of the subordinate facts found, we cannot say that the trial court erred in concluding that the plaintiff expected to be compensated and that the decedent, by accepting the services of the plaintiff, impliedly agreed to pay him their reasonable value. "A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances, a promise by the defendant to pay the plaintiff what those services are reasonably worth." *Collins v. Lewis,* 111 Conn. 299, 304, 149 A. 668; *Gustave Fischer Co. v. Morrison,* 137 Conn. 399, 403, 78 A.2d 242; *Automobile Ins. Co. v. Model Family Laundries, Inc.,* 133 Conn. 433, 439, 52 A.2d 137. The court did not err in concluding that an implied contract existed and in rendering judgment for the plaintiff upon the fourth count.

The defendant claims that, if the plaintiff is entitled to recover under the fourth count, the amount allowed for the services rendered is excessive. He contends that there was no determination as to how many of the 2000 hours devoted by the plaintiff to the decedent's business were spent on the bank's

time. If the plaintiff's employer allowed him to use time during business hours, the defendant is not entitled to credit for it. It may be that, because the plaintiff used some of the bank's time in rendering services to the decedent, he was required to spend time in addition to his regular working hours in performing his duties as an officer of the bank. It is also claimed that $4.25 per hour is excessive compensation, considering the nature of the services rendered, because they were not such as required the knowledge and experience of a qualified bank official. The trial court found that the work performed by the plaintiff paralleled generally his duties at the bank in giving business advice and that on an hourly basis he was paid $4.25 per hour for his services at the bank. It is true that the administrator of the estate of the decedent only paid the plaintiff something over $1 an hour for services rendered by him. This work, however, consisted of assisting the administrator in the operation of the golf course after the decedent's death. It was obviously different from the services rendered to the decedent. The court concluded that the skill and efforts of the plaintiff were directly responsible for saving the club property for the decedent. It was for the court to determine the reasonable value of the services the plaintiff rendered under the implied contract. *Collins* v. *Lewis,* supra. If the decedent chose to avail himself of the services of a man of greater experience and skill than he needed, that experience and skill should be adequately paid for. *Hull* v. *Gallup,* 49 Conn. 279, 281. The court did not err in determining that the reasonable value of the services performed by the plaintiff during the 2000 hours he devoted to the decedent's business was $8500.

In 1942, at the time the decedent became the owner of twenty-two or twenty-three of the twenty-five outstanding shares of stock in the corporation, he sought the plaintiff's advice concerning his status, in the light of his possession of these shares, and concerning the method of operation of the corporation. The plaintiff told him that he controlled the corporation and suggested that he acquire the interests in the second mortgage of the other two owners of that mortgage, since he, the plaintiff, believed that they could be bought out at a substantial discount. The decedent commissioned the plaintiff to negotiate for him and, in October, 1942, the plaintiff successfully concluded the purchase, by the decedent, of those interests, at a price considerably below the face value of the notes. In 1945, the plaintiff employed a law firm to search the title of the property and he examined the abstract of title. The second mortgage, in the principal amount of $9000, was foreclosed, and title vested in the decedent after June 21, 1945. The trial court found that the reasonable value of these and other services of a similar nature rendered by the plaintiff to the decedent was $1500. There was no evidence of the value of these services. There is nothing in the facts found which shows the time spent by the plaintiff in rendering them. "There can be no recovery for the reasonable value of services rendered unless evidence has been introduced as to what the reasonable value was. . . . Damages are an essential element of the plaintiff's proof before he is entitled to recover. . . . They must be proved with reasonable certainty." *Braithwaite* v. *Lee,* 125 Conn. 10, 13, 14, 2 A.2d 380. The trial court erred in finding that the reasonable value of these and other services of a similar nature was $1500.

The defendant claims that the alleged agreement between the plaintiff and the decedent was against public policy. He contends that under it the plaintiff was to share in the net profits, which could be determined only after deducting expenses, and that, therefore, the plaintiff undertook to share in the expenses of litigation in which he could have no interest except through his agreement. The only purpose of the proof of the claimed contract was to indicate that the services were rendered with an expectation of compensation and under circumstances which put the decedent on notice that they were not being rendered gratis. The trial court did not find that the parties entered into an agreement which provided that the plaintiff was to share in the net profits. The defendant also asserts that the plaintiff's claim is within the Statute of Frauds. The court did not find, as claimed by the defendant, that the parties entered into an agreement by which the plaintiff was to acquire an interest in land, or an agreement by which he was to become either a partner of the decedent or a party to a joint venture with him and which was not to be performed within one year. However, if the claimed contract was within the Statute of Frauds, that would not militate against the indication of an intention on the part of both parties to it that the services should be paid for.

The trial court allowed interest on the plaintiff's claim from January 26, 1948, the date of the decedent's death. The defendant claims that the court erred in allowing any interest. The judgment in this case should go no further than to determine whether the plaintiff has a lawful claim and the amount of it. "An appeal from the allowance or the disallowance of a claim by the commissioners carries the case into

the appellate court precisely as it stood before the commissioners. The question there is, as before, whether the claim is one that should be allowed against the estate. The object is not to get a judgment upon the claim, but to get a dividend from the estate." *Tolles's Appeal,* 54 Conn. 521, 524, 9 A. 402; *Corr's Appeal,* 62 Conn. 403, 407, 26 A. 478. The question of the allowance of interest on the claim can be considered only after it is determined whether the estate is solvent or insolvent. If the estate is determined to be solvent enough to pay interest on all claims which carry interest, then interest should be added to the principal amounts of those claims when they are paid by the executor. If the estate is insolvent, then the Probate Court should order the payment of all unsecured claims pro rata to their principal amounts. The trial court erred in allowing interest upon the amount of the claim.

The substance of the plaintiff's claim, as cross appellant, is that the court erred in not concluding that he and the decedent were parties to a joint venture under an implied contract. The court was not bound to accept the plaintiff's testimony to the effect that the agreement between him and the decedent was for an equal division of the property and its profits and accordingly did not err in not concluding that the plaintiff and the decedent were parties to a joint venture. *Dolan* v. *Dolan,* 107 Conn. 342, 349, 140 A. 745.

There is no error on the plaintiff's appeal. There is error on the defendant's appeal, the judgment is set aside and the case is remanded with direction to render judgment as on file except that the amount of the claim allowed shall be corrected to accord with this opinion.

In this opinion the other judges concurred.