[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises out of a dispute between Goldstein and Peck, P.C. (the "Firm" or the "Plaintiff") and Lisa Cooper, ("Cooper" or the "Defendant") over fees incurred in connection with the Firm's representation of Cooper in a divorce action. The Firm sued Cooper in a three count complaint dated April 24, 1990, with a return date of May 22, 1990, to recover its unpaid fees. Plaintiff has an attachment in the amount of Three Thousand Five Hundred Dollars and no cents ($3,500.00) on Defendant's real property located at 38 Aunt Park Lane, Newtown, Connecticut. That attachment issued on July 18, 1991 (Thim J.) after a contested hearing on July 1, 1991. This case was tried to the Court on April 7 and April 9, 1992.
Plaintiff's claims for recovery sound in contract, quantum merit and unjust enrichment. Defendant admitted in her answer to Count One that she agreed to compensate Plaintiff for services rendered. Plaintiff offered the testimony of G. Kenneth Bernhard, Esq., a shareholder of Plaintiff ("Bernhard"), that Plaintiff was retained by Defendant in September 1988 to represent her in a divorce action, and that he discussed fees and billing practices with Defendant at their first conference. That testimony was not contradicted. Plaintiff's bills for the period of September 1988 through January 1990, when the relationship between the Plaintiff and Defendant terminated, were admitted into evidence (Plaintiff's 1). The only evidence CT Page 3728 the defendant offered to dispute the total amount billed, the courtesy discount granted by Plaintiff, or the sum Plaintiff claims it is owed was that she made a $75.00 payment for the initial consultation that had not been reflected in the billing.
Defendant, in her answer to Plaintiff's Count Two, admitted that she agreed to pay reasonable fees for services rendered, but denied that the fees charged were reasonable. Plaintiff's bills (Plaintiff's 1) and Bernhard's testimony on behalf of Plaintiff showed that Plaintiff rendered 29.5 hours of legal services on Defendant's behalf at an effective billing rate of One Hundred Sixty-One Dollars ($161.00) per hour. (T. pp. 4,14-16) (His billing rate for the relevant period was One Hundred Eighty-Five Dollars ($185.00) per hour but the courtesy discount resulted in the lower hourly rate). The services rendered included, inter alia, pleadings, numerous conferences and telephone calls with Defendant and with counsel for Defendant's husband, Attorney Deborah Grover ("Grover"), court appearances and the drafting and revision of proposed separation agreements (Plaintiff's 1 and testimony of Bernhard). Bernhard testified that the amount Plaintiff charged Defendant was more than reasonable considering his qualifications, experience and nature and extent of the services rendered. The defendant testified that the fees charged were not reasonable.
This case presents a clear cut case of offer and acceptance. G. Kenneth Bernhard testified that Lisa Cooper came to his office seeking his representation in a dissolution action against her husband. In addition to discussions about her financial situation, needs and expectations, fees and costs were articulated. Mr. Bernhard advised Ms. Cooper that his hourly rate was $185.00 per and that she would also be responsible for court costs, filing fees and sheriff costs. (Tr. p. 4). He told her he would send monthly bills which would both show what he had done for her that month and what her indebtedness was as a result thereof. Id. No statement was made regarding the length of time that would be required to process the action to completion and no final figure as to cost was projected.
Although Mr. Bernhard never testified that in November 1988 Ms. Cooper said "yes" or other words indicating specific and verbal affirmance at either his initial conference with her on September 7, 1988 or on November 18, 1988 when she ultimately decided to proceed with the dissolution, she did give him a $1,500.00 retainer. (Tr. p. 7). Thereafter, Ms. Cooper accepted monthly bills through February 8, 1990 and she even paid an additional $200.00 toward the fee. (Plaintiff's Ex. 1). The defendant allowed 15 months and 29.5 billable hours to accrue before deciding to terminate the relationship at which point in time $3,070.30 was due and owing.[1]
CT Page 3729
Because of the nature of the case, no one knew or stated the ultimate cost to be incurred. Mr. Bernhard knew Ms. Cooper had limited resources and wanted to keep costs to a minimum while representing what he believed to be her best interests. (Tr. p. 11). Although both parties had a desire that costs be kept down, there was no definable limit suggested by Ms. Cooper or promised by Mr. Bernhard. And while Lisa Cooper was concerned that the action was not proceeding as quickly as she had hoped, the testimony is clear that she did not take issue with the fact that Mr. Bernhard had put in the hours or that his hourly rate was unfair or exorbitant. (Tr. pp. 11, 19-20).
The plaintiff has brought suit, in two separate counts,[2]
claiming violation of express contract and an implied contract, otherwise known as quantum merit. It is the finding of the trial court that there was an express employment contract. Mr. Bernhard set forth explicit terms to which Ms. Cooper demonstrated assent. Applying an objective test, Ms. Cooper manifested her assent to the terms of representation by intelligible conduct, act or sign. Alteri v. Layton, 35 Conn. Sup. 258
(1979). She paid a retainer after being advised of Mr. Bernhard's fees; this alone strongly suggests assent. Thereafter, 15 months of continuous meetings, telephone conversations, court appearances, receipt of monthly bills and additional payment by Lisa Cooper confirm it.
 Where one furnishes services under a contract at the request of another and with the expectation that he will be paid for his services he is entitled to payment in accordance with the terms of the contract. (citations omitted).
First Hartford Realty Corp. v. Ellis, 181 Conn. 25, 36 (1980). Therefore, the plaintiff is owed $3,070.30 and the defendant is legally obligated to pay it.
The alternate theory, upon which the plaintiff has sought judgment is on the grounds of quantum merit.[3]
 An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties. Corriveau v. Jenkins Bros., 144 Conn. 383, 387, 132 A.2d 67; Freda v. Smith, 142 Conn. 126, 134, 111 A.2d 679; Collins v. Lewis, 111 Conn. 299, 304, 149 A. 668; 1 Williston, Contracts (3d Ed. CT Page 3730 Jaeger) 3. The test is whether the conduct and acts of the parties show an agreement. Skelly v. Bristol Savings Bank, 63 Conn. 83, 87, 26 A. 474.
Brighenti v. New Britain Shirt Corp., 167 Conn. 403, 406 (1974). In this case, even if Mr. Bernhard had not expressly stated the terms of his demands for employment and even if Lisa Cooper had not promptly paid him $1,500.00 in response thereto, subsequent acts and conduct of the parties clearly demonstrated an employment agreement. Certainly Lisa Cooper never objected to Mr. Bernhard bringing suit on her behalf, filing his appearance, drafting agreements, conversing with her husband's attorney and making court appearances in the context of her dissolution action. It is clear from the course of conduct that Lisa Cooper had retained Mr. Bernhard and that in turn he acted reasonably in reliance upon that attorney-client relationship.
 [A]n implied contract would arise if services were rendered and materials furnished by the plaintiff at the request of the defendant under an expectation that they were to be paid for, and if . . . the services or materials were furnished under such circumstances that the defendants knew, or as reasonable persons should have known, that the plaintiff expected payment. Butler v. Solomon, 127 Conn. 613, 615, 18 A.2d 685; Casey v. McFarlane Bros. Co., 83 Conn. 442, 443, 76 A. 515.
Charter Oak Estates, Inc. v. Kearney, 160 Conn. 522, 531-32
(1971). The services were furnished by the plaintiff with the expectation of payment and under circumstances wherein the defendant knew, or as a reasonable person should have known that the plaintiff expected payment.
Where recovery is sought in quantum merit, the court is free to apply an evaluation of the reasonable amount of damages, Bianco v. Flontex, Inc., 145 Conn. 523, 524 (19__). It must have before it "evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." Bronson 
Townsend Co. v. Battistone [Battistoni], 167 Conn. 321, 327 (1974). The time sheets kept by G. Kenneth Bernhard set out the number of hours and the hourly rate; they further reflect a courtesy discount. These bills, complied with the court's knowledge of the case in specific, family cases in general, the profession and Mr. Bernhard's professional qualifications served to establish what CT Page 3731 was a reasonable fee and thus a reasonable amount of damages. See Barco Auto Leading Corp. v. House, 202 Conn. 106, 121
(1987); Bizzoco v. Chintz, 193 Conn. 304, 310 (1984); Appliances, Inc. v. Yost, 186 Conn. 673, 680-81 (1982); Piantedosi v. Florida, 186 Conn. 275, 279 (1982); and Crest Plumbing Heating Co. v. DiLoreto, 12 Conn. App. 468, 480
(1987). In light of the above, this Court also finds that the Defendant's Special Defense challenging the reasonableness of the Plaintiff's fee fails.
The court is also well aware of the First Special Defense challenging the competence of her former counsel. In specific, the defendant considers some of the plaintiff's efforts on her behalf to have been counterproductive. Nevertheless, the court finds that Mr. Bernhard clearly had Lisa Cooper's best interests at heart in his attempts to negotiate for her a settlement better than the one she ultimately obtained on May 24, 1990 with other counsel whom she retained in January 1990. (See Plaintiff's Exhibit 2 and 4). Ms. Cooper put on evidence that the draft settlement agreement prepared by Mr. Bernhard (Plaintiff's Exhibit 3) would not have been signed by her ex-husband. This does not demonstrate that Mr. Bernhard's time and effort were of no benefit. She produced no expert testimony to show Mr. Bernhard did not behave reasonably, competently, professionally or with her best interest in mind. She also failed to produce any expert testimony that no benefit came from Mr. Bernhard's efforts. Even Mr. Borofsky, who replaced Mr. Bernhard, never stated that he gained no value from his predecessor's efforts.[4]
Without any supporting expert testimony, Ms. Cooper was left with only her subjective impressions. She believed Mr. Bernhard's efforts were aggravating her ex-husband. Such evidence, if relevant at all, perhaps suggests that he was performing the service for which he had been retained. As plaintiff's Exhibits 5 and 6 reveal, Mr. Carter and Mr. Bernhard did not see eye to eye, which is hardly an unexpected event. Ms. Cooper further protested what she thought was a waste of time spent at a short calendar call on July 31, 1989. Both sides had made a motion for alimony pendente lite, one of which appeared on the calendar for that day. A significant amount of time would have been spent waiting in court to press that motion and conferring with family relations; therefore Mr. Bernhard, whose client was already receiving significant contribution to her children, and the running of the household, determined there was no need to waste the additional time that day to press a pendente lite motion and to rise having a court give her less than what she was already receiving. The two hours spent that day were minimal and hardly out of the range of what normally transpires during the pendency of a dissolution action. Of CT Page 3732 added note is the fact that Ms. Cooper allowed the clock to run ($2,357.00, to be exact) even after the July 31, 1989 incident. (See plaintiff's Exhibit 1). Certainly, had that day been so troubling she had ample time within which to terminate the relationship before additional work was performed. This $2,357.00, after discount, constitutes three-fourths of the bill in issue.
 Ordinarily, a party's preparation for performance of a contract is not compensable unless there was conferred a benefit on the other party to the contract. Santoro v. Mack, 108 Conn. 683, 694-5, 145 A. 273 (1929); 5 Corbin, The Law of Contracts 1107, p. 577 (1964). When the services are performed at the request of the opposing party and in expectation that compensation would be made for them, or were so made with the defendant's knowledge or acquiescence, however, recovery may be had without reference to the extent of the benefit conferred on the defendant. Santoro v. Mack, supra, 695; Butler v. Solomon, 127 Conn. 613, 615, 18 A.2d 685 (1941); Clark v. Diefendorf, 109 Conn. 507, 510, 147 A. 33 (1929).
J D Kasper Assoc. v. Merrimac Assoc., Inc., 37 Conn. Sup. 712,716 (1981).
The record in the present case reveals that the defendant allowed the plaintiff to proceed under the assumption that the services were to be paid for. Under these circumstances, the plaintiff was entitled to receive the reasonable value of the work which the defendant had requested.
Judgment for $3,070.30 hereby enters.
KATZ, JUDGE