[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff was employed by the defendant in a division of its public works department as a "Permanent Spare Refuse Laborer." He commenced his employment in 1989 and was terminated on September 20, 1993.
In this suit, he claims he was wrongfully terminated in retaliation for his filing a worker's compensation claim. He further argues the defendant did not follow the proper grievance process in terminating him. Finally, he also claims an implied contract existed between him and the city and this contract required the defendant to afford him the full termination procedures available to full time employees.
 I
The defendant's response to the allegation that the termination was the result of his filing a compensation claim is CT Page 13536 that he was terminated for chronic absenteeism. In support of its position, the city offered the defendant's attendance record and two warning letters sent to the plaintiff to advise him that his absences from work could result in his termination. This evidence shows the plaintiff enjoyed four-day weekends, absenting himself from work regularly on Mondays and Fridays.
The defendant also went so far as to send an employee to the plaintiff's residence to obtain his presence at work. When the plaintiff agreed to work, the defendant's employee would wait for him and drive him to the job site.
The plaintiff had a prior compensation claim which appears to have come and gone without incident. The claim relied on by the plaintiff appears to have been of modest duration, payments were not excessively high, and there was no permanent injury claimed. An employee of the defendant testified that the refuse removal operation produces numerous injuries invoking the compensation claim process and this one was just another typical one.
Even assuming the plaintiff has met his initial burden under § 31-290a of the General Statutes, the court cannot find, on these facts, "that a discriminatory reason more likely motivated the employer" nor that the defendant's explanation "is unworthy of credence." Ford v. Blue Cross Blue Shield ofConnecticut Inc., 216 Conn. 53-54 (1990).
The court in this case also heard detailed explanation of the problems the city faced because of excessive absenteeism. Venessa Burns, public works director at the time of the plaintiff's termination, outlined the policy she instituted and the efforts made to maintain a stable work force. She also noted the two warning letters sent to the plaintiff an attempt to avoid terminating him.
This was not a case where. absent other factors, the defendant suddenly terminated the plaintiff as his compensable work absence concluded, as the plaintiff urges.
While the plaintiff recites the work records of other employees to suggest that there were people with worse absenteeism, we are not trying a case based on discrimination wherein comparisons might be appropriate. The details of these other employees' work records are collateral to the issue in this case. However, the court notes in passing that at least two other CT Page 13537 public works employees had their names removed from the "Permanent Spare Refuse Laborer List" for excessive absences.
The court concludes the termination did not constitute a violation of § 31-290a.
 II
The plaintiff argues that he is covered by the union contract and is therefore entitled to the termination procedure available to covered employees. The city disagrees and refers to a stipulation entered into by the city and the union. That stipulation deals with "Permanent Spare Refuse Laborers," the plaintiff's designation, and reads as follows:
 (4) Whenever a Permanent Spare Refuse Laborer is hired permanently as a full time Refuse employee he/she shall then be covered by all the terms of the Local 713 Contract and their seniority date shall be the actual date when they begin work as a regular full time employee. Time spent on the Permanent Spare Refuse Laborer list or time spent as an active Spare Laborer shall not be counted for seniority purposes or longevity, vacations, etc. (Emphasis added)
It appears clear that these employees are not covered until "then" — i.e., when they are hired permanently as a full time refuse employee. The plaintiff makes no claim he was so hired.
Later in the stipulation, 5E reads:
 "The seven (7) Permanent Spare Refuse Laborers shall have access to the Grievance Procedure as it pertains to Item #5 in this stipulation only."
Item 5 deals only with wages, insurance, vacation and holiday overtime pay and in no way involves grievances and grievance procedures.
The plaintiff argues he is looking to this court to enforce his contract rights, but in the absence of such rights the court cannot create them.
The plaintiff argues that the city created an implied contract with the plaintiff when it issued him the two warning CT Page 13538 letters. The city was not obligated to do this, but their decision to do so cannot be construed as placing him under the union contract governing regular full time employees.
The claim that the plaintiff advances as to the existence of an implied contract must fail in view of the discussion above. He was specifically treated with in the stipulation. He acquired only those rights enumerated.
Finally, it is basic contract law that an implied contract can only exist where there is no express contract. Freda v.Smith, 142 Conn. 126, 134 (1955). Leonard v.Dyer, 26 Conn. 172, 176 (1857) addresses the situation in this case, stating there can be no implied contract where an express contract exists between the same parties and deals with the same subject matter. See also Reynolds v. ChryslerFirst Commercial Corp., 40 Conn. App. 733 (1996). In that case, the court held that customs and usage of progressive disciplinary action did not rise to the level of a contract, absent a showing that the employer intended to be bound by such a contact. Id. at 733. In Reynolds, there was no written contract, while in this case the written contract addresses this subject matter as noted above.
CONCLUSION
The city successfully rebutted the presumption of retaliatory discharge by credible evidence of a reasonable policy aimed at legitimate municipal concerns. There was no implied contract between the parties in view of the terms of the union contract and stipulation.
Judgment may enter for the defendant City of New Haven on all counts.
Anthony v. DeMayo Judge Trial Referee